In re SAGENT TECHNOLOGY, INC., DERIVATIVE LITIGATION,

This Document Relates to: All Actions

No. C–02–0709 JPH.

United States District Court, N.D. California.

Aug. 15, 2003.

Brian J. Robbins, Marc M. Umeda, Robbins Umeda & Fink, LLP, San Diego, CA, Eric L. Zagar, Schiffrin & Barroway LLP, Bala Cynwyd, PA., Jason Brodsky, Brodsky & Smith LLC, Bala Cynwyd, PA,. Robert S. Green, Green & Jigarjian LLP, San Francisco, CA, Robert A. Jigarjian, Green & Jigarjian LLP, San Francisco, CA, Evan J. Smith, Brodsky & Smith LLC, Bala Cynwyd, PA, Robert B. Weiser, Schiffrin & Barroway LLP, Bala Cynwyd, PA, for plaintiff.

Nicole M. Healy, Ignacio E. Salceda, Jack I. Siegal, David S. Steuer, Robert L. Tashjian, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for defendant.

## ORDER RE MOTIONS TO DISMISS

HAMILTON, District Judge.

Before the court are defendants' motions to dismiss the consolidated shareholder derivative complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and alternative motions to stay the action in favor of an action presently pending in the Superior Court of California, County of Santa Clara. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

### INTRODUCTION

This is a shareholders' derivative action suit brought for the benefit of nominal defendant Sagent Technology, Inc. ("Sagent") against certain of Sagent's current and former directors and officers ("the individual defendants"). Plaintiffs allege insider trading and accounting irregularities, which they claim necessitated a restatement of revenues for the period in which the stock sales occurred. Plaintiffs allege violations of California Corporations Code § 25402 and common law claims of breach of fiduciary duty and waste of corporate assets. Jurisdiction is based on 28 U.S.C. § 1332, as plaintiffs and defendants are alleged to be citizens of different states and the matter in controversy exceeds $75,000.

Sagent, which was founded in 1995 and went public in April 1999, creates and sells business software designed to help businesses collect, analyze, understand, and act on customer and operational information. Sagent's revenue is derived from license fees for . software products and fees for services relating to the software products, including maintenance, consulting, training, technical support, and software and data updates. Sagent sells its products both directly to customers and indirectly through enterprise software vendors (who integrate Sagent's products with their own applications) and resellers and distributors (who sell Sagent's products to end-user customers). Sagent is a Delaware corporation, with its principal executive offices in California.

Plaintiffs allege claims against thirteen of Sagent's current and former officers and directors ("the individual defendants"):

● Defendant Shanda Bahles ("Bahles") was a director of Sagent from May 1995 until some time in 2001 or early 2002. Bahles sold 999,762 shares of Sagent common stock, for $15,011,663, between October 26, 1999, and November 3, 1999, and 309 shares of Sagent stock, for $6,650,058, between January 24, 2000, and February 9, 2000.

● Defendant John Zicker ("Zicker") has been a director of Sagent since June 1995, and served as the company's Executive Vice President of Technology and Chief Technology Officer from June 1995 to September 2000. Zicker sold 80,000 shares of Sagent common stock, for $1,385,950, between October 26, 1999, and November 5, 1999.

● Defendant Richard Shapero ("Shapero") was a director of Sagent from May 1995 to September 2000. Shapero sold 34,172 shares of Sagent common stock, for $587,080, on November 2, 1999.

● Defendant Thomas M. Lounibos ("Lounibos") served as Sagent's Executive Vice President of Sales and Marketing from 1998 to March 2000. Plaintiffs allege that Lounibos sold 286,097 shares of Sagent common stock, for $3,950,080, between October 25, 1999, and November 1, 1999, and 31,000 shares, for $575,930, between February 18, 2000, and February 29, 2000.

● Defendant W. Virginia Walker ("Walker") served as Sagent's Executive Vice President of Finance and Administration and Chief Financial Officer from 1998 to May 2000. Walker sold 18,372 shares of Sagent common stock, for $250,642, between October 26, 1999, and November 5, 1999.

● Defendant Kenneth C. Gardner ("Gardner") was a director of Sagent from June 1995 to January 2002, serving as President and Chief Executive Officer from June 1995 to August 2000, and Chairman of the Board and Chief Technology Officer from August 2000 to January 2002.

● Defendant Ben C. Barnes ("Barnes") was a director and served as Sagent's President and Chief Executive Officer from August 2000 to July 2002.

● Defendant Andre Boisvert ("Boisvert") has served as a director since April 2001, Chairman of the Board since January 2002, and Chief Executive Officer since July 2002.

● Defendant Klaus S. Luft ("Luft") served as a director from April 1999 until late 2001 or early 2002.

● Defendant Ali Jenab ("Jenab") has served as a director since November 2001.

● Defendant Keith Maib ("Maib") has served as a director since July 1999.

● Defendant Irving H. Lichtenwald ("Lichtenwald") has served as a director since September 2001.

● Defendant David Eliff ("Eliff") served as Sagent's Executive Vice President of Finance and Administration and Chief Financial Officer from May 2000 to November 2001.

The facts underlying the claims in this action are substantially similar to those alleged in two securities fraud class actions filed in the Northern District of California—*In re Sagent Technology, Inc., Securities Litigation,* case No. C–01–20081 JW, filed October 20, 2000 ("*Sagent I*"), and *In re Sagent Technology, Inc., Securities Litigation,* case No. C–01–4637 PJH, filed November 30, 2001 ("*Sagent II*"), both alleging claims under the 1934 Securities Exchange Act and the Private Securities Litigation Reform Act.

In *Sagent I*, the plaintiffs alleged claims under §§ 10(b) and 20(a) of the 1934 Act, and Rule 10b–5, against Sagent and other defendants, including Bahles, Zicker, Shapero, Lounibos, Walker, Gardner, Luft, Maib, Gardner, and Sagent's venture capitalists. Plaintiffs alleged that during the period between October 21, 1999, and April 18, 2000, defendants violated Generally Acceptable Accounting Principles ("GAAP")[1]

---

1. GAAP, a technical term in financial accounting, encompasses the authoritative "conventions, rules, and procedures necessary to define accepted accounting practice at a particular time," and includes broad guidelines of general application as well as detailed practices and procedures. Accounting Princi- ples Board, APB Opinion No. 4; *see also United States v. Arthur Young & Co.,* 465 U.S. 805, 811 n. 7, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984); Patrick R. Delaney, Barry J. Epstein, Ralph Nach, Susan Weiss Budak, *Wiley GAAP 2003* (John Wiley & Sons, Inc., 2002) at 1–13.

by improperly recognizing millions of dollars of royalty revenue on software licenses that did not meet the revenue recognition criteria set forth in SOP 97–2,[2] and made misleading public statements regarding various licensing agreements. Plaintiffs asserted that defendants committed these violations in order to inflate the value of Sagent's stock, until Bahles, Zicker, Shapero, Lounibos, and Walker were able to sell at least $8 million of their own Sagent stock. *Sagent I* was dismissed in April 2003, pursuant to the terms of a court-approved final settlement.

In *Sagent II*, plaintiffs alleged claims under §§ 10(b) and 20(a), and Rule 10b–5, against Sagent, its current CEO, its former CFO, and one of its former salesmen, based on Sagent's announcement in November 2001 that it had discovered that sales orders totaling $5 million had been forged by the former salesman in 2001, and that it would be necessary to restate the company's revenues for the first three quarters of 2001. The proposed class period in *Sagent II* extended from May 11, 2001, to November 28, 2001. In September 2002, the court dismissed the claims against Sagent, its CEO, and its former CFO, on the ground that plaintiffs had failed to plead facts constituting strong evidence of deliberately reckless or conscious misconduct, as required under *In re Silicon Graphics, Inc., Securities Litiga-*

*tion,* 183 F.3d 970 (9th Cir.1999). The court granted leave to amend, but plaintiffs opted not to file an amended complaint. Plaintiffs have filed a motion for default judgment against the defendant salesman, who was indicted for fraud, pleaded guilty, and was sentenced, and is presently in federal custody.

In the present action, plaintiffs seek recovery, on behalf of Sagent, against Sagent's directors and former officers and directors for breaches of fiduciary duty. As in *Sagent I*, plaintiffs assert that the individual defendants caused Sagent to violate GAAP by improperly recognizing revenue in the third and fourth quarters of 1999 and the first quarter of 2000—specifically, that defendants violated SOP 97–2 by recognizing revenue on software licenses before the customization, production, and delivery of the software had been completed.[3] As in *Sagent II*, plaintiffs allege improper revenue recognition in connection with the forged sales during the first three quarters of 2001.

Plaintiffs claim that the individual defendants, and in particular the defendants who were members of Sagent's Audit Committee (Bahles, Shapero, Boisvert, and Maib) failed to establish and maintain adequate internal accounting controls and to ensure that the company's financial statements were based on accurate information,

---

**2.** Statement of Position ("SOP") 97–2, Software Revenue Recognition, issued by the Accounting Standards Executive Committee of the AICPA, *see In the Matter of Critical Path, Inc.,* 2002 WL 193146 *6 n. 4 (S.E.C. Release No. 1503, 45393, Feb. 5, 2002), provides that if an arrangement to deliver software, either alone or together with other products or services, does not require significant production, modification, or customization of the software, revenue should be recognized only when a) persuasive evidence of an arrangement exists; b) delivery has occurred; c) the vendor's fee is fixed or determinable; d) collectability is probable. *See In the Matter of*

*Microstrategy, Inc.,* 73 S.E.C. Docket 2860, 2000 WL 1838295 *3 (S.E.C. Release No. 43724, Release No. 34–43724, Release No. AE–1350, Dec. 14, 2000).

**3.** Plaintiffs assert that defendants caused Sagent to improperly recognize revenues on sales to Commence One, Siebel Systems, yuSave.com, Interpath Communications, and Environmental Systems Research Institute ("ESRI"). With the exception of the claims regarding the sales to ESRI, these allegations of improper revenue recognition also (among others) formed the basis of the claims in *Sagent I.*

in violation of SEC rules, GAAP, and Sagent's publicly-filed Audit Committee Charter. Plaintiffs also assert that the individual defendants were aware that Sagent had improperly recognized revenue, and that they caused Sagent to publicly disseminate inaccurate information regarding the company's financial condition, so that the company's common stock would trade at inflated prices.

Finally, plaintiffs allege that during the period between late October 1999 and late February 2000, Bahles, Zicker, Shapero, Lounibos, and Walker ("the selling defendants") used nonpublic information regarding Sagent's true financial condition to profit from the sale of large amounts of Sagent stock, and that the individual defendants aided and abetted the selling defendants' use of this nonpublic information to sell their personal holdings of Sagent stock at inflated prices.[4]

Plaintiffs assert five causes of action.[5] Against the selling defendants, plaintiffs allege a claim of insider trading, in violation of California Corporations Code § 25402, and a common law claim of breach of fiduciary duty for insider trading. Against all the individual defendants, plaintiffs allege a claim of breach of fiduciary duty for disseminating misleading information to the public; a claim of breach of fiduciary duty for failure to maintain accounting controls; and a claim of waste of corporate assets.

Defendants now seek an order dismissing all causes of action for failure to state a claim. Alternatively, they seek an order staying the case pending resolution of a shareholder derivative suit based on allegations similar to the allegations in this case, and which is presently pending in the Superior Court of California, County of Santa Clara.

## DISCUSSION

### A. Legal Standard

A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Pillsbury, Madison & Sutro v. Lerner,* 31 F.3d 924, 928 (9th Cir.1994). Review is limited to the contents of the complaint. *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir.1995). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir.1996). Conclusory allegations of law and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. *Associated Gen. Contractors v. Metro. Water Dist. of So. Cal.,* 159 F.3d 1178, 1181 (9th Cir. 1998). In dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.1995) (citations omitted).

### B. Shareholder Derivative Suits

A shareholder does not have standing to sue in an individual capacity for injury to the corporation. William Meade Fletcher, et al., 13 *Fletcher Cyclopedia of the Law of*

---

4. These are the same stock sales that formed the basis of the "insider trading" allegations of scienter in *Sagent I.*

5. The complaint alleges eight causes of action, but three of those are asserted only against former defendant Pricewaterhouse-Coopers, LLP.

*Private Corporations,* § 5939 (perm.rev. ed.2002). Such an action must be brought as a derivative action—"an equitable remedy in which a shareholder asserts on behalf of a corporation a claim not belonging to the shareholder, but to the corporation." *Id.* Once the action, if filed in federal court, has been characterized as direct or derivative, the applicable procedural rules are determined by federal law. *Sax v. World Wide Press, Inc.,* 809 F.2d 610, 613 (9th Cir.1987).

Federal Rule of Civil Procedure 23.1 governs derivative actions to "enforce a right of a corporation" when the corporation itself has failed to enforce a right which could properly be asserted by it in court. *Id.* (citation and quotation omitted). Rule 23.1 requires that a shareholder seeking to file a derivative action allege that he or she made a pre-suit demand on the corporation's board of directors, or allege facts showing why such a demand would have been futile. The complaint must "allege with particularity" the efforts made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority, or the reasons for the plaintiff's failure to obtain the action or for not making the effort. Fed.R.Civ.P. 23.1.

## C. Defendants' Motions to Dismiss

Sagent moves to dismiss the complaint on the ground that plaintiffs did not make a demand on Sagent's board of directors, as required by Delaware law, and that they fail to plead particularized facts excusing the demand, as required under Rule 23.1. The individual defendants move to dismiss on the ground that plaintiffs fail to allege facts sufficient to state a claim for insider trading, for breach of fiduciary duty, or for waste of corporate assets.

### 1. Futility of demand

Plaintiffs concede that they did not demand that Sagent's board of directors institute this action against the individual defendants, but they contend that the demand would have been futile because three of the six members of the board were incapable of making an independent and disinterested decision.

Under *Erie,* a federal court sitting in diversity jurisdiction must follow state substantive law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (district court must follow substantive law, including choice-of-law rules, of forum state). Rule 23.1 is procedural only, and does not supply the substance of the demand requirement. *Kamen v. Kemper Fin. Servs.,* 500 U.S. 90, 96, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) (Rule 23.1 "clearly *contemplates* both the demand requirement and the possibility that demand may be excused," but "does not *create* a demand requirement of any particular dimension"). Because the function of the demand requirement in delimiting the respective powers of the shareholders and the directors to control corporate litigation "is a matter of 'substance,' not 'procedure,'" *id.* at 96–97, 111 S.Ct. 1711, the court must apply the law of the forum state—here, California.

Under the "internal affairs" doctrine, which is followed in most states, the law of the state of incorporation governs liabilities of officers or directors to the corporation and its shareholders. *Shaffer v. Heitner,* 433 U.S. 186, 215 n. 44, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *see also CTS Corp. v. Dynamics Corp. of America,* 481 U.S. 69, 89, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987); *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 621, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983); Rest. (Second) of Conflict of Laws § 309 and comment (a). Internal

corporate affairs involve those matters that are peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders. *Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982); *see* Rest. (Second) of Conflict of Laws § 313, comment (a).

■ In general, courts in California follow this rule and apply the law of the state of incorporation in considering claims relating to internal corporate affairs. *See* Cal. Corp.Code § 2116 (directors of foreign corporation transacting intrastate business are liable to corporation for making of unauthorized dividends, purchase of shares or distribution of assets of false certificates, reports or public notices or other violation of official duty according to applicable laws of state of incorporation);[6] *see also Batchelder v. Kawamoto*, 147 F.3d 915, 920 (9th Cir.1998); *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir.1985). Accordingly, in considering the contours of the demand requirement—when it is required and when it is excused—this court must look to the law of Delaware, the place where Sagent is incorporated. *In re Silicon Graphics*, 183 F.3d at 989–90.

■ Under Delaware law,

the right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation.

*Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). In general, demand is excused where, under the particularized facts alleged, a reasonable doubt is created that a majority of the directors are disinterested and independent *or* that the challenged transaction was otherwise the product of a valid exercise of business judgment. *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled on other grounds*, 746 A.2d 244 (Del.2000).

Because plaintiffs do not challenge a particular decision taken by Sagent's board, however, the second prong of the *Aronson* test is inapplicable, and both plaintiffs and defendants agree that the appropriate standard is the one set forth in *Rales*. Under *Rales*, the court must determine whether the particularized factual allegations create a reasonable doubt that, as of the time the complaint was filed, the board that would be addressing the demand could have impartially considered its merits without being influenced by improper considerations—in other words, whether a majority of the board could have properly exercised its independent and disinterested business judgment in responding to a demand. *Rales*, 634 A.2d at 934. The *Aronson* standards apply with regard to assessing allegations of interest and lack of independence, but the focus is on whether the board as constituted at the time of the filing of the complaint could consider the demand based on the merits of the claim, without improper forces holding sway. *See id.*

■ Directorial interest exists whenever divided loyalties are present, or where the director will receive a personal financial benefit from a transaction that is not equally shared by the stockholders, or when a corporate decision will have a "materially detrimental impact" on a director but not the corporation or its stockholders.

---

**6.** California makes an exception to the internal affairs doctrine where shares of the foreign corporation are not listed or traded on a national exchange, and where more than one-half of the outstanding voting shares are held by California residents. Cal. Corp.Code § 2115.

*Id.* at 936; *Aronson,* 473 A.2d at 812. "The animating principle of the demand futility doctrine is that the directors cannot faithfully decide whether proceeding with the corporation's litigation is in the corporation's best interest when the complaint seeks redress for the conduct that gives rise to the personal financial benefit for which the directors alone have received." *In re General Instrument Corp. Sec. Litig.,* 23 F.Supp.2d 867, 873 (N.D.Ill.1998) (citing *Aronson,* 473 A.2d at 814). The personal benefit must arise "from the challenged transaction." *Rales,* 634 A.2d at 933.

■■■ "Independence" exists when a director's decision is based on "the corporate merits of the subject before the board." rather than on "extraneous considerations or influences." *Aronson,* 473 A.2d at 816. When lack of independence is charged, the plaintiff must allege particularized facts "show[ing] that the Board is either dominated by an officer or director who is the proponent of the challenged transaction or that the Board is so under his influence that its discretion is 'sterilize[d].'" *Levine v. Smith,* 591 A.2d 194, 205 (Del.1991), *overruled on other grounds,* 746 A.2d 244 (Del.2000). If a director is considered "controlled" by another, he or she is lacking in the independence necessary to consider the challenged transaction objectively.

A controlled director is one who is dominated by another party, whether through close personal or familial relationship or through force of will. A director may also be considered "controlled" if he or she is beholden to the allegedly controlling entity, as when the entity has the direct or indirect unilateral power to decide whether the director continues to receive a benefit upon

which the director is so dependent or is of such subjective material importance that its threatened loss might create a reason to question whether the director is able to consider the corporate merits of the challenged transaction objectively. *Telxon Corp. v. Meyerson,* 802 A.2d 257, 264 (Del.2002) (citation omitted).

As of February 11, 2002, the date the first complaint in this consolidated action was filed, Sagent's board of directors comprised six members: Zicker, Barnes, Boisvert, Jenab, Maib, and Lichtenwald.[7] Of these six, Jenab, Maib, and Lichtenwald were and had always been outside directors, with no employee or consultant relationship to Sagent, and plaintiffs appear to concede that there is no question that they were disinterested and independent.

Of the remaining three, Zicker is alleged to have sold 80,000 shares of Sagent common stock while in possession of material, adverse, nonpublic information; Barnes was employed by Sagent at the time the lawsuit was initiated, and is alleged to have been subject to the influence of other board members to maintain his employment with the company; and Boisvert was a paid consultant to Sagent at the time the lawsuit was initiated, and is also alleged to have been subject to the influence of other board members to maintain his relationship with Sagent.

■ The court finds that plaintiffs have not pled particularized facts showing that all three of these board members could not be disinterested and independent. Plaintiffs assert that Zicker directly benefitted when he sold Sagent common stock while in possession of material, adverse nonpublic information, reaping more than $1.3

7. The complaint alleges that at the time this action was commenced, Sagent's board consisted of eight members. Defendants argue, and plaintiffs concede, that Sagent had a six-member board in February 2002.

million in proceeds. They claim that he is therefore directly interested in the transactions that are the subject of this action and is "legally incapable" of considering a demand to commence and prosecute this action.

"[T]he mere threat of personal liability for approving a questioned transaction, standing, alone, is insufficient to challenge either the independence or disinterestedness of directors." *Aronson,* 473 A.2d at 815. A plaintiff may not "bootstrap allegations of futility" by pleading merely that "the directors participated in the challenged transaction or that they would be reluctant to sue themselves." *Blasband v. Rales,* 971 F.2d 1034, 1049 (3rd Cir.1992) (citing Delaware law). A director may have a disabling interest for pre-suit demand purposes where the potential for liability rises to "a substantial likelihood." However, as discussed below with regard to the insider trading claim, the complaint contains no allegations that Zicker was in possession of any particular material adverse information when he sold his Sagent stock in late October and early November 1999. Plaintiffs thus fail to plead particularized facts raising a reasonable doubt that Zicker faces a substantial likelihood of liability for the alleged insider trading. *See In re Oracle Corp. Derivative Litig.,* 824 A.2d 917, 939 n. 58 (2003). The bare allegations of stock sales are insufficient, because the trading of stock is not in itself improper under Delaware law. *Field v. Allyn,* 457 A.2d 1089, 1099 (Del.Ch.), *aff'd,* 467 A.2d 1274 (Del.1983).

■ Plaintiffs also claim that neither Barnes nor Boisvert were capable of acting independently. They assert that Barnes' principal occupation at the time this suit was initiated was his employment with Sagent, and that in fiscal year 2000 he received a total of $566,982 in salary and cash bonuses, 150,000 shares of Sagent restricted stock, and options to purchase 1,155,313 shares of Sagent common stock. They claim that Boisvert, in his position as a paid consultant, was receiving $5,000 in fees a month from Sagent, and had received an additional $50,000 in January 2002. Thus, plaintiffs contend, both Barnes and Boisvert were subject to considerable influence from other board members to maintain their employment relationships with Sagent and were therefore incapable of impartially considering a demand to prosecute this action.

In order to plead lack of independence, plaintiffs must allege particularized facts raising a reasonable doubt that Barnes and Boisvert are capable of making decisions for the corporation based on the merits of the subject rather than on "extraneous considerations or influences." *Aronson,* 473 A.2d at 816. Plaintiffs claim that Barnes and Boisvert are not independent from other board members who have the ability to control their employment and compensation, based solely on their positions and the monetary compensation they received in connection with their duties as, respectively, an employee of and a consultant to Sagent. However, demand futility cannot be pled merely on the basis of allegations that directors acted or would act to preserve their positions. *Grobow v. Perot,* 539 A.2d 180, 188 (Del.1988), *overruled on other grounds,* 746 A.2d 244 (Del. 2000). If these allegations were sufficient to show lack of independence, every inside director would be disabled from considering a pre-suit demand.

■ The court finds that the complaint fails to allege particularized facts that raise a reasonable doubt as to the disinterestedness or the independence of either Zicker, Barnes, or Boisvert. Accordingly, the motion to dismiss for failure to allege futility of demand must be granted.

### 2. Claims against the selling defendants

■ The complaint alleges two causes of action for insider trading against the selling defendants, one brought under California Corporations Code § 25402, and the other asserted as a common law claim of breach of fiduciary duty. Defendants argue that the § 25402 claim is improper because California law does not control the affairs of a Delaware corporation, and that under the "internal affairs" doctrine, only Delaware law applies. Defendants also contend that neither cause of action states a claim because plaintiffs fail to allege facts showing that Bahles, Zicker, Shapero, Lounibos, or Walker possessed any specific material, nonpublic information at the time they sold their stock, or that they traded on the basis of such information.

As noted above in the discussion of the demand requirement, the "internal affairs" doctrine is a conflict-of-laws principle that recognizes that only one state should have the power to regulate matters peculiar to the relationship among the corporation, its officers and directors, and its shareholders, "because otherwise a corporation could be faced with conflicting demands." *MITE*, 457 U.S. at 645–46, 102 S.Ct. 2629. Plaintiffs contend, however, not every act taken by a corporation's officers and directors involves internal affairs, and that the § 25402 claim in this case does not implicate the sort of activity that would warrant the application of Delaware law.

Citing the Restatement (Second) of Conflict of Laws, plaintiffs argue that "internal affairs" are matters such as

steps taken in the course of incorporation; election or appointment of officers and directors; adoption of bylaws; issuance of shares; allocation of preemptive rights; holding of directors' and shareholders' meetings; determination of methods of voting; rights to examine corporate records; corporate charter and bylaw amendments; mergers; consolidations; reorganizations; reclassification of shares; issuance of bonds; declaration and payment of dividends; loans to officers, directors, and shareholders; and stock repurchases and redemption.

Rest.2d, Conflict of Laws § 302, comment (a) (1971). Plaintiffs assert that because insider trading is not an official act of the kind listed in § 302 of the Restatement and is unrelated to any corporate purpose, the local law of the state of incorporation should not apply. They also contend that insider trading is not a "violation of official duty" under California Corporations Code § 2116, which provides that liability of directors of foreign corporations is determined under the laws of that corporation's state of incorporation.

Section 302 of the Restatement contains two provisions. Under subsection (1), "[i]ssues involving the rights and liabilities of a corporation, other than those dealt with in § 301,[8] are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties." Rest.2d Conflict of Laws § 302(1). Under subsection (2), "[t]he local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied." *Id.* § 302(2).

It is clear from the quoted language that § 302 applies to "the rights and liabilities

**8.** Section 301 applies to "[t]he rights and liabilities of a corporation with respect to a third person that arise from a corporate act of a sort that can likewise be done by an individual." Rest.2d, Conflicts of Laws, § 301.

of a corporation." By contrast, § 309 relates to the liability of officers and directors to the corporation, and is therefore more germane to the matter before the court. Section 309 provides that

> [t]he local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship ... to the parties and the transaction, in which event the local law of the other state will be applied.

Rest.2d, Conflicts of Laws § 309.

The comments to § 309 note, first, that "[l]iability will typically be imposed upon directors under [§ 309] for such matters as the fraudulent or negligent mismanagement of the corporation's affairs ... and unlawfully profiting at the corporation's expense," *id.* § 309 comment (a); and that "in the absence of an applicable local statute, the local law of the state of incorporation has usually been applied to determine the liability of the directors or officers ... to the corporation" for acts such as seizing a corporate opportunity or causing the commission of a tort, *id.* § 309 comment (c). The claims alleged by plaintiffs in this case fit comfortably within the categories of "fraudulent or negligent mismanagement of the corporation's affairs" and "unlawfully profiting at the corporation's expense."

Nevertheless, plaintiffs contend that California law applies to the substantive claims alleged here because, as the California Supreme Court stated in *Diamond Multimedia Sys., Inc. v. Superior Court,* 19 Cal.4th 1036, 80 Cal.Rptr.2d 828, 968 P.2d 539 (1999), California has "a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices." *Id.* at 1064, 80 Cal.Rptr.2d

828, 968 P.2d 539. While this statement is certainly true, the California Supreme Court's decision in *Diamond Multimedia* does not strengthen plaintiffs' position, as the court did not address the applicability of the internal affairs doctrine in a shareholder derivative suit.

*Diamond Multimedia* was brought as a shareholder class action in a California state court, and the issue before the California Supreme Court was whether out-of-state purchasers and sellers of securities whose price had been affected by unlawful market manipulation proscribed by § 25400 could avail themselves of the Corporations Code's statutory remedy. The suit was not a derivative action seeking recovery on behalf of a Delaware corporation, but rather a direct action seeking recovery on behalf of a class of investors for unlawful conduct that had occurred in California.

Thus, the reasoning of the California Supreme Court in *Diamond Multimedia* is not directly applicable to the question whether the law of California or the law of Delaware should apply to the insider trading claim. While California, like all states, has an interest in preserving a business climate free of fraud, plaintiffs have not established that California has a more significant relationship to the parties and the transaction than does Delaware. Accordingly, under the provisions of § 309 of the Restatement, the law of Delaware, the state of incorporation, should apply.

Plaintiffs also cite an unreported decision from this district, *Bilunka v. Sanders,* 1994 WL 447156 (N.D.Cal., Mar.1, 1994), in support of their argument that "there is no doubt that California's insider trading statutes apply to foreign corporations." In *Bilunka,* a shareholder brought a derivative suit on behalf of a Delaware corporation, alleging insider trading in violation of Corporations Code § 25402. Relying on

*Johnson v. Hui,* 752 F.Supp. 909 (N.D.Cal. 1990), the *Bilunka* court found that § 2116 did not preclude plaintiffs from asserting a § 25402 claim, asserting that insider trading is "unrelated to corporate purpose because of the personal benefit derived on the trading directors at the expense of the shareholders and the corporation," and that it is not an "official duty" within the meaning of § 2116. *Bilunka v. Sanders,* 1994 WL 447156 at *3 (citing *Johnson,* 752 F.Supp at 913). The court denied the motion to dismiss the § 24502 claim.

*Johnson* was also brought as a derivative suit on behalf of a Delaware corporation. The plaintiff alleged breach of fiduciary duty by engaging in insider trading, and insider trading in violation of § 24500. In contrast to the issue raised in *Bilunka,* however, the matter addressed by the *Johnson* court was whether the plaintiff had adequately alleged futility of demand. Moreover, the opinion does not even allude to the question whether either § 2116 or the internal affairs doctrine precludes a plaintiff from asserting a § 24502 claim against a foreign corporation. In other words, *Johnson,* which is cited as support for the court's decision in *Bilunka,* does not mention the point for which it is cited.

Moreover, the court is not persuaded by the *Bilunka* court's reasoning—that because insider trading is not an "official duty" within the meaning of § 2116, a plaintiff should not be precluded from asserting a § 24502 claim for insider trading in a derivative suit brought on behalf of a foreign corporation in California. While insider trading is obviously not an "official duty," there *is* an "official duty" at issue. That is the fiduciary duty owed by officers and directors of a corporation to that corporation and its shareholders. Under both § 2116 and the "internal affairs" doctrine, Sagent's officers and directors are liable to the corporation under the laws of Delaware for any violation of that official duty.

■■■ The court finds that the complaint does not state a claim for insider trading under Delaware law. The general rule is that a fiduciary is subject to a duty not to use on his own account information acquired by him in the course of his fiduciary relationship, unless the information is a matter of common knowledge. *Brophy v. Cities Service Co.,* 70 A.2d 5, 7–8 (Del.Ch. 1949); *see also Oberly v. Kirby,* 592 A.2d 445, 463 (Del.1991) (citing *Brophy*). Thus, officers and directors of a corporation may buy and sell the corporation's stock at will, except where they have acquired confidential information that will allow them to deal in the stock to their own advantage. *Brophy,* 70 A.2d at 8. In alleging a claim of breach of fiduciary duty for insider trading, a plaintiff must assert some causal relationship between the alleged confidential information and the profit that the defendant is said to have derived from the unlawful purchase or sale. *See id.* at 7–8.

Here, the complaint does not allege facts showing that the defendants who sold stock during the approximately 28–month period at issue in the complaint possessed any specific material, nonpublic information at the time of each of those transactions, nor that they traded on the basis of such information. Nor does the complaint allege any link between the possession of any nonpublic information and the sales of stock by Bahles, Zicker, Shapero, Lounibos, or Walker. Accordingly, the motion to dismiss the insider trading claims must be granted.

3. Claims against all individual defendants

a. Breach of fiduciary duty

■■■ Plaintiffs assert that the individual defendants breached their fiduciary duties by disseminating misleading information to the public, and by failing to establish and maintain accounting controls.

Officers and directors of a corporation owe a fiduciary duty to the corporation and its shareholders. *See, e.g., Singer v. Magnavox Co.*, 380 A.2d 969, 976–77 (Del.1977), *overruled on other grounds*, 457 A.2d 701(Del.1983). However, directors and officers cannot be held liable for mere negligence in the conduct of their obligations. *Aronson*, 473 A.2d at 812 n. 6; *see also Brehm v. Eisner*, 746 A.2d 244, 253–54 (Del.2000). Under Delaware law, they are presumed to act in good faith and in the honest belief that their actions are in the best interests of the company. *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del.1993), *modified*, 636 A.2d 956 (Del. 1994).

■ Defendants contend that the complaint fails to state a claim for intentional breach of fiduciary duty, and fails to state facts sufficient to overcome the presumption that the defendant officers and directors acted in the best interests of the corporation. Defendants also argue that the complaint alleges no facts indicating how the individual defendants can be liable for events that occurred either before they joined Sagent or after they left the company. Defendants assert in addition that Sagent's Articles of Incorporation bar recovery for damages for non-intentional breaches of fiduciary duty.

Because a number of defendants either left or joined the company during the time period spanned by the complaint, the complaint cannot state a claim for breach of fiduciary duty in the absence of more specific allegations regarding which defendants are alleged to have performed which acts. The complaint covers the period from July 1999 to November 2001, and asserts claims against the six members of the board as the board was constituted when the complaint was filed in February 2002—Zicker, Barnes, Boisvert, Jenab, Maib, and Lichtenwald—and against seven former directors and officers—former directors Shapero, Bahles, Gardner, and Luft, and former officers Lounibos, Walker, and Eliff. These defendants were involved in the operations of Sagent at different times during the period covered by the complaint.

Of the six sitting members of the board, only two were on the board during the period October 1999 through February 2000, when the alleged misappropriation/insider trading/waste of corporate assets occurred. The remaining four joined the board much later, Barnes in August 2000, Boisvert in April 2001, Lichtenwald in September 2001, and Jenab in November 2001. Of the seven former directors and officers, four are "selling defendants." Of these four, three no longer held their positions by the end of 2000—Lounibos, who left in March 2000, Walker, who left in May 2000, and Shapero, who left in September 2000. Of the three non-selling officers and directors, two—Gardner and Luft—appear to have been affiliated with Sagent for the entire period alleged in the complaint, while one—Eliff—did not join Sagent until May 2000.

The complaint makes little distinction among any of these defendants. For example, plaintiffs allege that "[t]he Individual Defendants, particularly the members of the Audit Committee," were "responsible for maintaining and establishing adequate internal accounting controls for Sagent," Cplt. ¶ 27, but "failed to implement and maintain an adequate internal accounting control system," Cplt. ¶ 32. They assert that four of the individual defendants were members of the Audit Committee—Bahles, from 1998 to the date of filing the complaint; Shapero, from 1998 to 2000; Boisvert, from April 2001 to January 2002; and Maib, from 2000 to the date of filing the complaint. Cplt. ¶¶ 9, 11, 16, 19. However, they do not clarify which defendants, and particularly which Audit Com-

mittee Members, are alleged to have failed to maintain proper accounting controls, or when.

The complaint also alleges instances of improper revenue recognition in 3Q99, 4Q99, and 1Q99, and in 1Q01, 2Q01, and 3Q01. Plaintiffs assert, for example, that "during 3Q and 4Q 1999 . . . the Individual Defendants caused Sagent to violate GAAP by recognizing millions of dollars of royalty revenue on software licenses that did not meet the revenue recognition criteria set forth in SOP 97–2." Cplt. ¶ 39. They then describe software sales for which "the individual defendants" are alleged to have improperly recognized revenue. *See* Cplt. ¶¶ 43–45, 47–51. However, again, they do not indicate which defendants were involved in the alleged failure to maintain accounting controls.

The complaint alleges further that "the Individual Defendants" made false and misleading statements to the public. For example, plaintiffs assert that "the Individual Defendants caused Sagent to issue" numerous press releases. On October 21, 1999, "the Individual Defendants . . ." caused Sagent to issue a press release announcing its financial results for 3Q 1999. Cplt. ¶ 40. However, "[a]t the time the Individual Defendants caused Sagent to issue the October 21, 1999, press release, they . . . knew, but did not disclose to the market, that the Individual Defendants . . . had improperly recognized revenue in 3Q 1999." Cplt. ¶ 42. On January 19, 2000, "the Individual Defendants . . . caused Sagent to issue a press release announcing its financial results for 4Q 1999," in which Gardner was reported as stating that Sagent " 'continued its tremendous revenue growth into the fourth quarter,' " when "[t]he Individual Defendants . . . knew that Sagent's 'tremendous revenue growth' was only achieved through improper and deceptive accounting practices." Cplt. ¶¶ 52–53.

Similarly, the complaint alleges that on at least eleven other occasions, "the Individual Defendants caused Sagent to issue" press releases—on March 8, 2000; April 18, 2000; May 9, 2000; August 8, 2000; October 12, 2000; October 19, 2000; October 24, 2000; May 10, 2001; August 2, 2001; October 30, 2001; and November 15, 2001; Cplt. ¶¶ 57, 60, 63–67. 69, 71, 72. The March 8 and April 18 press releases are alleged to have been misleading because "the Individual Defendants" knew, but did not disclose, that the matters reported in the press releases were untrue. The press releases issued in May through November are not directly alleged to have been misleading, but appear to be connected with the claims regarding improper recognition of revenue in 1Q01, 2Q01, and 3Q01.

Nevertheless, as stated above, the complaint fails to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act. Plaintiffs plead no facts showing how defendants that joined the board in late 2000 or in 2001 could be responsible for events that occurred in 1999, or how defendants that left Sagent in 2000 could have any connection with actions taken, or not taken, in 2001.

While Federal Rule of Civil Procedure 8 requires only that the a pleading set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," the underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Conley*, 355 U.S. at 47–48, 78 S.Ct. 99. A complaint that lumps together thirteen "individual defendants," where only three of the individuals was alleged to have been present for the entire period of the events alleged in the complaint, fails to give "fair notice" of the

claim to those defendants. Accordingly, the motion to dismiss the breach of fiduciary duty claims must be granted.[9]

#### b. Waste of corporate assets

■ Plaintiffs assert that the nonpublic information regarding the company's financial condition was a "proprietary asset" which defendants used for their own benefit. They claim that the use of this information to sell stock at an inflated price equates with a waste of corporate assets because the company's material nonpublic information was used without the company receiving any consideration.

The essence of a claim of waste of corporate assets is the diversion of corporate assets for improper or unnecessary purposes. *Michelson v. Duncan*, 407 A.2d 211, 217 (Del.1979). Corporate waste "entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade." *Brehm*, 746 A.2d at 263. Most often the claim is based on a transfer of corporate assets that serves no purpose for the corporation or for which no consideration is received. *Id.* A cause of action for corporate waste must be asserted in a derivative action, because a cause of action for impairment or destruction of the corporation's business vests in the corporation rather than in the individual shareholders. *Kramer v. Western Pacific Indus.*, 546 A.2d 348, 353 (Del.1988); *see also Fletcher* § 5923.

■ The court finds that the complaint fails to state a claim for corporate waste because plaintiffs do not identify the corporate asset that was allegedly wasted. To the extent that "insider information" can be considered a corporate asset for purposes of a claim of waste of corporate assets, this claim essentially duplicates the insider trading claim discussed above. In both causes of action, the complaint alleges that certain confidential, proprietary information concerning Sagent's financial condition and future business prospects was a "proprietary asset" belonging to the company, and that the selling defendants, aided and abetted by the remaining individual defendants, used this information for their own benefit. In their opposition to the motion to dismiss, plaintiffs assert the complaint "clearly allege[s] that confidential, proprietary information about Sagent's improper revenue recognition was used to garner $28 million in improper insider trading profits for the Individual Defendants, and that the Company received no consideration in return." As with the insider trading claim, however, the claim of corporate waste is deficient because plaintiffs do not identify the insider "information" that defendants supposedly possessed. Plaintiffs point to no authority supporting a claim of waste of corporate assets in the form of such vaguely defined "information," and the motion to dismiss this cause of action must be granted.

---

**9.** Because of the deficiencies in the pleading of the claims against the individual defendants, discussed above, the court cannot consider defendants' remaining arguments regarding the adequacy of the pleading of the breach of fiduciary duty claims. However, to the extent that the complaint alleges any negligent breach of fiduciary duty, such a claim is precluded by the exculpatory clause in Sagent's articles of incorporation. Section 102(b)(7) of the Delaware Corporations Code authorizes the inclusion in the articles of incorporation of a provision "eliminating or limiting the personal liability of a director ... for monetary damages as a director" with certain limited specified exceptions. 8 Del. Corp.Code § 102(b)(7). Contrary to plaintiffs' argument, it is not improper for the court to consider the effect of a § 102(b)(7) exculpatory provision on a 12(b)(6) motion to dismiss. *See Emerald Partners v. Berlin*, 787 A.2d 85, 91–92 (Del.2001).

### D.   Alternative Motion to Stay the Action

Sagent and the individual defendants also move in the alternative for an order staying the present action pending resolution of the similar state court derivative action. In the interests of "wise judicial administration," a federal court may stay a case involving a question of federal law where there is a concurrent state action pending that raises the identical issues. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The *Colorado River* doctrine is not a recognized form of abstention; rather, it is a form of deference to state court jurisdiction. *Coopers & Lybrand v. Sun–Diamond Growers of Cal.,* 912 F.2d 1135, 1137 (9th Cir.1990).

*Colorado River* abstention is appropriate only under "exceptional circumstances." *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236. The decision to abstain rests on a careful balancing of the relevant factors as they apply in a given case, with the balance "heavily weighted" in favor of exercising jurisdiction. *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Because the court prefers to determine whether plaintiffs can state a viable claim before considering whether the action should be stayed under *Colorado River,* the alternative motion to stay will be denied without prejudice. In the event that plaintiffs file an amended complaint, and defendants subsequently either choose not to seek dismissal or unsuccessfully move for dismissal, the court will permit defendants to refile the motion to stay pending resolution of the state court action.

### CONCLUSION

In accordance with the foregoing, the motions of Sagent and the individual defendants to dismiss the consolidated shareholder derivative complaint are GRANTED with LEAVE TO AMEND. The motions to stay the action are DENIED WITHOUT PREJUDICE. Any amended complaint shall be filed and served no later than September 19, 2003, and any motion to dismiss shall be filed and served no later than 30 days following service of the amended complaint.

In addition to pleading particularized facts creating a reasonable doubt that demand on Sagent's board would have been futile, and pleading facts sufficient to state a claim under each of the various causes of action, any amended complaint must also comply with Rule 23.1's procedural requirements. Rule 23.1 requires that the complaint in a shareholder derivative suit be verified. In addition, the complaint must allege that the plaintiff was a shareholder or member "at the time of the transaction of which the plaintiff complains." Fed.R.Civ.P. 23.1.

The Ninth Circuit has interpreted Rule 23.1 to require that the derivative plaintiff "be a shareholder at the time of the alleged wrongful acts" and "retain ownership of the stock for the duration of the lawsuit." *Lewis v. Chiles,* 719 F.2d 1044, 1047 (9th Cir.1983). A derivative plaintiff has no standing to sue for misconduct that occurred prior to the time he became a shareholder of the corporation. *Kona Enterprises, Inc. v. Estate of Bishop,* 179 F.3d 767, 769 (9th Cir.1999). Thus, the complaint must indicate when plaintiffs bought stock in Sagent, and must state that they have owned stock continuously since the date of the filing of the lawsuit (if they have).

This order fully adjudicates the motions listed at Nos. 44 and 47 on the clerk's docket for this case.

**IT IS SO ORDERED.**