63135. BLAKE et al. v. CONTINENTAL SOUTHEASTERN LINES, INC.

POPE, Judge.

Appellant Deborah Jean Blake, individually and as administratrix of the estate of her deceased husband, John W. Blake, brought this action against appellee Continental Southeastern Lines, Inc. d/b/a Continental Trailways (hereinafter Trailways), alleging negligence and wilful and wanton misconduct in the wrongful death of her husband. Following the close of evidence by both parties, the trial court granted Trailways' motion for directed verdict and denied appellant's similar motion. Appellant brings this appeal, challenging the correctness of those rulings.

John W. Blake was killed when his automobile slammed into the rear of a Trailways bus. The incident occurred on the morning of May 15, 1978 on State Route 365 in Gwinnett County. S. R. 365 is a controlled-access, four-lane divided highway designed and built to the same specifications as the federal interstate highway system. The collision occurred in the right traffic lane as both vehicles were traveling north. The weather "was overcast. It wasn't sunny, wasn't raining, just a hazy day." The pertinent trial testimony is set forth below.

*Bobby E. Croy:* The bus in question was an "Eagle" bus, forty feet long and eight feet wide. On the day in question Croy, an experienced bus driver and driving instructor, was directed to take two trainees out in a bus in order to give them further instruction in the technique of double clutching, "to keep the gears from growling" and "getting [the bus] in the proper gear at the right time . . . smoothly." Both trainees had already completed an eight-week

training course which had included 40-50 hours of driving time. Leon Whited, one of the trainees, drove the bus from the Trailways garage in downtown Atlanta to a point on S. R. 365 where Croy directed him to pull off the roadway onto the paved shoulder, also known as the emergency strip or lane, and stop. Croy then replaced Whited behind the wheel in order to show the trainee what he was doing wrong and how to correct it. The emergency flashers on the bus were engaged while it idled, and Croy spent the next several minutes in instruction. Croy then engaged the left turn signal, checked his rear view mirror and began to move. As he left the shoulder and returned to the roadway, he saw only one automobile. That automobile was at the crest of a hill approximately six tenths of a mile behind him to the south. He testified that although he could not tell the speed of the automobile to his rear, he nevertheless had plenty of time to get onto the roadway safely. He was traveling at approximately 20 m.p.h. as he entered the roadway, moving as fast as possible. He was traveling at approximately 30 m.p.h. and had shifted into the third of four forward gears when the collision occurred.

*Joseph B. Markham:* Gwinnett County Police Detective Markham was the first law enforcement officer to arrive at the scene following the collision. His investigation revealed that the entire front end of the deceased's automobile had collided squarely with the rear of the bus. The automobile left skid marks of 60 feet 7 inches preceding the point of impact. He measured the distance from the crest of the hill south of the collision site to the point of impact at six tenths of a mile. The incident took place entirely in the right traffic lane. Det. Markham concluded that the deceased had been traveling in excess of 55 m.p.h.; he estimated the speed of the bus at 30 m.p.h. He testified, "Physical evidence indicated due to skid marks that Mr. Blake was somewhat inattentive in his driving and struck the rear of the Trailways bus. The Trailways bus had access to the highway and was fully involved in the normal northerly bound direction of traffic ... I could find no fault other than . . . by Mr. Blake . . ."

*David P. Holliman:* Gwinnett County Police Sergeant Holliman arrived at the scene shortly after Det. Markham and participated in the investigation as to the cause of the collision. He concluded also that the collision was due to the deceased's inattention "for whatever reason to the path [in] which his vehicle was going." He opined that possibly the deceased had gone to sleep.

*Scott G. Brackett* and *Leon Whited:* These men were the Trailways trainees who were on the bus with Croy at the time of the collision. Although neither actually saw the collision, their testimony corroborated that of Croy; i.e., that Croy was instructing them as to double clutching, that the bus had been stopped on the paved

shoulder of S. R. 365 for that purpose, that Croy engaged his left turn signal and checked his rear view mirror before proceeding onto the roadway, and that the collision occurred as the bus was in third gear and had reached a speed of approximately 30 m.p.h. Their testimony was that the bus had traveled between 340-500 feet from where it had been stopped to the point of impact with the deceased's automobile.

*Odis R. Moss:* Moss was the only eyewitness to the incident. As Moss crested the hill, he saw the Trailways bus in the right traffic lane traveling approximately 20 m.p.h.; he therefore moved into the left traffic lane. The deceased then passed Moss on the right traveling at approximately 65 m.p.h.; Moss was traveling at 57 m.p.h. Moss slowed his automobile to 45-50 m.p.h. so that the deceased would have sufficient room to move into the left lane and avoid the bus — at least 150-175 feet. The deceased's automobile never varied from the right lane and, in fact, accelerated slightly. Moss measured the distance between the crest of the hill and the point of collision at four tenths of a mile and estimated that the bus had traveled 75-90 feet from the first time he saw it to the time of impact.

*William H. Bretherton, Jr.:* Bretherton testified on behalf of appellant as an expert witness. He is employed by the Georgia Department of Transportation and is responsible for ensuring that the freeways in this state operate in accordance with state and federal specifications. His testimony consisted primarily of a recitation of various "rules of the road" as set forth in Code Ann. Ch. 68A-1 et seq.

Bretherton testified that a vehicle could not stop on the shoulder of a controlled-access highway such as S. R. 365 except for an emergency; however, there is no definition of what constitutes an emergency. He also testified that the minimum speed on S. R. 365 was 40 m.p.h. and explained, "This is what we call a pacing problem — is the vehicles will be going as slow as, hopefully not slower than, forty miles an hour. So you have a wide variation of speed on cars out there. What we like to do is bunch the speed together as little [sic?] as possible so your probability of error is a lot less . . . The bunching would then give a driver in case of an error a much greater chance of seeing that the other driver is going around his speed, and he can judge the error. However, if one car is going [slow] and the other car is going fast, there is a chance they cannot perceive the difference in speed [and] you have a chance for erratic movements or accidents [such as] rear end accidents and sideswipe same direction accidents." Finally, Bretherton described as unsafe a vehicle entering the roadway from the shoulder of a controlled-access highway at a speed of less than 40 m.p.h. He stated that the proper procedure for doing so was to accelerate on the shoulder to at least the minimum legal speed

before merging into the right lane of the roadway.

1. The issue presented by this appeal is whether there was a conflict in the evidence before the trial court as to any material issue of fact and whether the evidence introduced, with all reasonable deductions therefrom, demanded a verdict in favor of either party. "A verdict may only be directed in situations where, if there were a determination the other way, it would have to be set aside by the court. [Cit.] It is only where reasonable men may not differ as to the inferences to be drawn from the evidence that it is proper for the judge to remove the case from jury consideration." *State Farm Mut. &c. Ins. Co. v. Snyder,* 125 Ga. App. 352 (187 SE2d 878) (1972).

Appellant alleged that Trailways had negligently operated the bus, listing seven specific allegations of negligence. We will limit our discussion in this case to one of those allegations — negligence in the improper utilization of the paved shoulder (a/k/a emergency lane) of a controlled-access highway. Our review of the record discloses that appellant's remaining allegations of negligence are either not meritorious or not applicable to the circumstances in this case. See generally in this regard *Barnett v. Thomas,* 126 Ga. App. 587 (191 SE2d 450) (1972).

The Uniform Rules of the Road, as enacted by statute in this state, provide in pertinent part: "Except when necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or official traffic control device, no person shall: (1) Stop, stand or park a vehicle:... I. On any controlled-access highway . . ." Code Ann. § 68A-1003 (a)(1)I. "Controlled-access highway" is defined: "Every highway, street or roadway in respect to which owners or occupants of abutting lands and other persons have no legal right of access to or from the same except at such points only and in such manner as may be determined by the public authority having jurisdiction over such highway, street or roadway." Code Ann. § 68A-101 (7). "Highway" and "street" are defined: "The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." Code Ann. §§ 68A-101 (16) and (54). "Roadway" is defined: "That portion of a highway improved, designed, or ordinarily used for vehicular travel." Code Ann. § 68A-101 (44). Stopping, standing or parking on a *roadway* is expressly prohibited except as provided therein. Code Ann. § 68A-1001.

Trailways argues that because the bus had not been stopped on the roadway of S. R. 365, there was no violation of Code Ann. § 68A-1003 (a). We disagree. Construing Code Ann. § 68A-1003 (a)(1) I in light of the definitions cited herein from Code Ann. § 68A-101, the prohibition against stopping, standing or parking is not limited solely

to the roadway of a controlled-access highway. Rather, said prohibition extends to the "entire width between the boundary lines" of a controlled-access highway. See generally *State Revenue Commission v. Alexander,* 54 Ga. App. 295 (1) (187 SE 707) (1936). However, Code Ann. § 68A-1003 (a) does permit stopping, standing or parking when done "in compliance with law or the direction of ... [an] official traffic control device." In response to a question as to whether there were any regulations other than the statutes herein cited with regard to stopping on a controlled-access highway such as S. R. 365, expert witness Bretherton testified that a vehicle is not authorized to stop on the shoulder of such a highway for any reason other than an emergency.[1]

"It is generally the duty of the driver of an automobile to anticipate the presence of other travelers on the highway, and to have due regard for their rights to the use thereof." *Bach v. Bragg Bros. & Blackwell,* 53 Ga. App. 574 (1) (186 SE 711) (1936). "In order for a party to be liable for negligence, it is not necessary that he should have been able to anticipate the particular consequences which ensued. It is sufficient, if in ordinary prudence he might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might result." *Williams v. Grier,* 196 Ga. 327, 337 (26 SE2d 698) (1943). Trailways had a duty to the deceased to comply with all rules and regulations with respect to its use of a controlled-access highway such as S. R. 365. Whether Trailways breached that duty, and whether that breach was the proximate cause of the death of appellant's husband, are, under the facts in the case at bar, questions for the jury. See *Atlanta Coca-Cola Bottling Co. v. Jones,* 236 Ga. 448 (224 SE2d 25) (1976); *Bussey v. Dawson,* 224 Ga. 191 (160 SE2d 834) (1968); see also *Pollard v. Weeks,* 60 Ga. App. 664 (1d) (4 SE2d 722)(1939). Therefore, the trial court erred in directing a verdict in favor of Trailways on the issue of negligence.

2. However, the record is devoid of evidence of wilful and wanton misconduct on the part of Trailways, and the trial court did

---

[1] .We presume that the regulations to which Bretherton referred were contained in the "Manual on Uniform Traffic Control Devices," which is promulgated by the U. S. Department of Transportation and which, according to Bretherton, has been adopted for use in this state. This manual of regulations was not introduced into evidence in this case, and we may not take judicial notice of its contents. Code Ann. §§ 3A-102 (f)(5); 3A-108. See *Dix v. State,* 156 Ga. App. 868 (275 SE2d 807) (1981). However, since Trailways did not object to the introduction of this oral testimony concerning this regulation, we may properly consider such testimony for the purpose of this appeal. See *Moret v. State,* 246 Ga. 5 (3) (268 SE2d 635) (1980).

not err in directing a verdict in favor of Trailways on this issue. See generally *Harris v. Reid,* 30 Ga. App. 187 (2) (117 SE 256) (1923), overruled on other grounds, *Caskey v. Underwood,* 89 Ga. App. 418 (4) (79 SE2d 558) (1953).

3. Finally, the evidence of record did not demand a finding that the collision was not, in whole or in part, caused by the negligence of the deceased. Therefore, the trial court did not err in denying appellant's motion for directed verdict.

*Judgment affirmed in part; reversed in part. Quillian, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 19, 1982 —
REHEARING DENIED MARCH 31, 1982.

*Bruce E. Pashley,* for appellants.
*Edward S. White,* for appellee.