A04A1821. REID et al. v. MIDWEST TRANSPORTATION et al.
(607 SE2d 170)

ANDREWS, Presiding Judge.

Elizabeth Reid, individually and on behalf of her two children, Antwuan Johns and Christine Johns,[1] appeals from the trial court's grant of summary judgment to truck driver Yingst, his employers, Midwest Transportation and Ward Logistics, Inc., and their insurer, Great West Casualty Company, in her suit alleging negligence and negligence per se arising from a traffic accident.

---

[1] Antwuan Johns was seriously injured and Christine Johns was killed in the wreck at issue.

In reviewing a grant of summary judgment pursuant to *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), this Court conducts a de novo review of the law and the evidence, *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997), giving the opposing party the benefit of all reasonable doubt and construing the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. *Clark v. Cauthen*, 239 Ga. App. 226, 227 (1) (520 SE2d 477) (1999). If a defendant who does not bear the burden of proof at trial demonstrates that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case, the burden shifts to the nonmoving party to point out specific evidence giving rise to a triable issue. *Lau's Corp.*, supra.

1. In her first enumeration of error, Reid contends that the trial court used an incorrect standard when considering summary judgment because he did so on "relatively undisputed facts."

The trial court's order states that

[t]o prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law. *Lau's Corp.*[, supra]. *With this standard in mind*, the *relatively* undisputed facts are as follows:

(Emphasis supplied.)

Reid disregards the language preceding "relatively" in her argument. While, considered alone, "relatively" may not be appropriate in this context, our de novo review of the evidence and reasonable inferences and conclusions drawn therefrom demonstrates that summary judgment was proper under the *Lau's Corp.* standard and that the facts set out by the court as the basis for its ruling satisfied this standard.

The evidence, so viewed, was that, on January 17, 1999, Yingst, employed by Midwest and driving a tractor-trailer under lease to Ward, was hauling a load of frozen beef from Kansas to Charleston, South Carolina. Traveling with him, but not driving, was his then fiancée. Reid and her children were passengers in the 1987 Dodge Colt being driven by Joseph Earl Readus, Jr.[2]

Both Yingst and Readus were eastbound on I-20 in McDuffie County in the rain and mist. Also driving eastbound in a van was

---

[2] Readus, Jr. is a defendant in this case and it remains pending below as to him.

Linda Videtto, with her sister-in-law Shirley Videtto in the passenger seat. As Yingst was driving, he noticed that traffic ahead of him had begun to slow on account of a five-car pileup on the bridge ahead. I-20 at this point had two eastbound lanes and the left one was blocked by the pileup, requiring traffic to merge into the right lane. Yingst began slowing and merged into the right lane. Immediately ahead of his truck was a Jeep Cherokee and in front of the Jeep was another tractor-trailer.

The Jeep Cherokee's driver lost control and veered off into the bar ditch next to I-20. A pickup behind Yingst also went off into the ditch. Yingst pulled his tractor-trailer off I-20 into the emergency lane, turned on his four-way flashers, and ran into the ravine. His truck was approximately 300 to 500 feet from the Jeep and he could not have pulled further into the emergency lane because of a guard rail and steep slope.

Linda Videtto, who had gotten off the interstate seeking gasoline, got back on it at the top of the long sloping hill approximately a mile or more from the five-car accident site. As she pulled onto I-20, she could see Yingst's truck ahead in the emergency lane with the lights flashing. Shirley Videtto, in the passenger seat, could also see the truck with its lights flashing.

As Linda Videtto approached the rear of Yingst's truck, "creeping along, . . . no more than maybe five miles an hour," she checked her rearview mirror because she was worried about someone coming over the hill fast, but saw no cars in the right lane behind her. As Videtto's van got within one car length of Yingst's truck, Readus' car struck the van in the passenger side door, bounced off, then crashed into the rear of Yingst's truck, with the front end and part of the passenger compartment embedded under the truck. The Videttos heard no squeal of brakes or skidding prior to the crash. Yingst's truck had been parked in the emergency lane three to four minutes prior to Readus' running into it.

Trooper Freeman and Trooper Johnson arrived on the accident scene at approximately the same time and within seven minutes of receiving the accident report. There were no other police, fire trucks, or ambulances yet on the scene when they arrived. Trooper Johnson, as the senior trooper, took over the accident scene and conducted the initial investigation. Trooper Johnson found Yingst's tractor-trailer in the emergency lane, "totally out of the roadway." Based on that investigation, he concluded that the cause of the wreck was Readus' following too closely, going too fast for conditions, and striking a parked vehicle. Cocaine and marijuana metabolites were found in Readus' body, although not enough to have impaired him according to the forensic toxicologist.

Trooper Johnson also stated that the emergency lane was for emergencies and that, in his opinion, seeing an accident in front of you and stopping to see if people are injured is such an emergency.[3]

2. Reid's second, third, and fourth enumerations of error deal with the trial court's conclusion that Yingst was not shown to be negligent, and are considered together.

Reid argues that Yingst's parking in the emergency lane was in violation of OCGA § 40-6-203; that Yingst was not confronted with an "emergency" as defined by OCGA § 40-6-50 (b); and that the court's conclusion that this emergency, if any, constituted a defense for Yingst and the other defendants was erroneous.

OCGA § 40-6-203 (a) (1) (I) provides that "(a) Except when necessary to avoid conflict with other traffic, or *in compliance with law* or the directions of a police officer or official traffic-control device, no person shall: (1) Stop, stand, or park a vehicle: . . . (I) On any controlled-access highway." (Emphasis supplied.)

Reid's argument that Yingst's stopping was in violation of this statute is based on *Storer Communications v. Burns*, 195 Ga. App. 230 (393 SE2d 92) (1990). There, a reporter parked in the emergency lane, activated his flashers, and went to report on a four-car accident on the interstate. It was rainy and overcast and Burns' wife lost control of her car, fishtailed, bounced off the left guardrail, and slid back across the interstate into the parked Storer vehicle.

Both *Storer*, supra, and the case cited by it for the proposition relied upon by Reid, *Blake v. Continental Southeastern Lines*, 161 Ga. App. 869, 872 (1) (289 SE2d 551) (1982), however, involved nonemergency situations as the reason for stopping in the emergency lane and lacked any "act of a *third party* which intervened between the negligence in parking the vehicle in the emergency lane and the collision with that negligently parked vehicle. [Cits.]" (Emphasis in original.) *Storer*, supra at 231. The reporter in *Storer* stopped to get a news story and the bus driver in *Blake* had stopped to show two bus driver trainees how to double clutch and was coming back onto the roadway from the emergency lane when struck by the decedent's car.

Here, as found by the trial court, Yingst was responding to an emergency which occurred before him. Pursuant to OCGA § 40-6-50 (b), a vehicle may be in an emergency lane "in the event of an actual emergency." As stated by Trooper Johnson, in his opinion, this situation was such an emergency. No contrary evidence has been put forward by Reid.

---

[3] See *Dawkins v. Doe*, 263 Ga. App. 737, 738, n. 3 (589 SE2d 303) (2003).

Therefore, Yingst's stopping was in compliance with law, OCGA § 40-6-50 (b), and not in violation of OCGA § 40-6-203. See *Phillips v. South West Mechanical &c.*, 254 Ga. App. 144, 146 (1) (561 SE2d 471) (2002).

Also, OCGA § 51-1-29, the Good Samaritan Statute, applies to this situation. Pursuant to that statute, a person "who in good faith renders emergency care at the scene of an accident . . . without making any charge therefor[,] shall not be liable for any civil damages as a result of any act or omission by such person in rendering emergency care. . . ." See *Wallace v. Hall*, 145 Ga. App. 610 (244 SE2d 129) (1978).

We also find persuasive *Flynn v. United States*, 681 FSupp. 1500 (D. Utah 1988), aff'd, 902 F2d 1524 (10th Cir. 1990). There, pedestrian Daniels was struck by a car driven southbound by Helga Robertson. Robertson parked on the side of the four-lane highway and she and her passenger returned to aid Daniels in the middle of the highway. Flynn, driving a van northbound, stopped near Daniels and activated her emergency flashers. She left her van and went to aid Daniels. Three National Park Service rangers, out of their jurisdiction, approached the women going southbound and pulled to the side of the road. Ranger Cornelius, who was driving, activated his emergency lights as the truck slowed and momentarily activated its siren. No more than five seconds later, Partridge, who was driving behind the NPS truck, going 52 mph in a 45-mph zone and legally intoxicated, swerved into the center of the highway and the women, killing Flynn and Robertson. Partridge said he swerved after seeing the NPS truck's brake lights and that he was distracted by the flashing emergency lights.

The Flynn family sued the NPS employees, who were granted summary judgment under the Utah Good Samaritan Act. The court found that any negligent acts or omissions of the rangers in stopping to render aid at the Daniels' accident were not subject to civil liability. *Flynn*, supra at 1508.

3. Relying solely on *Storer Communications*, supra, Reid's fifth enumeration is that the trial court erred in finding that Readus' negligence intervened between any negligence of Yingst in parking the tractor-trailer in the emergency lane and Readus' running under the trailer.

Summary judgment is appropriate in negligence cases when, viewing all the facts and reasonable inferences from those facts in a light most favorable to the plaintiff, the evidence does not create a triable issue on the question of proximate cause. *Deese v. Nations-Bank of Ga.*, 222 Ga. App. 275, 278 (2) (474 SE2d 18) (1996). "Although the question of proximate cause is ordinarily for the jury to decide, plain and indisputable cases may be decided by the court as a

matter of law. In such plain cases, the inquiry is whether the causal connection between the defendant's conduct and the injury is too remote for the law to countenance a recovery." (Footnote omitted.) *Thomas v. Food Lion*, 256 Ga. App. 880, 883 (1) (570 SE2d 18) (2002).

"[G]enerally, an independent, intervening criminal act of a third party, without which the injury would not have occurred, will be treated as the proximate cause of the injury superseding any negligence of the defendant, unless the intervening criminal act is a reasonably foreseeable consequence of the defendant's negligent act." (Footnote omitted.) *Thomas*, supra at 882-883 (1). See also *FPI Atlanta, L.P. v. Seaton*, 240 Ga. App. 880, 884 (2) (524 SE2d 524) (1999) (physical precedent only) (the "intervening criminal act of a third party, which directly caused the injury, will be treated as the supervening proximate cause of such injury" unless the act was a reasonably foreseeable consequence of defendant's negligence). "In other words, the intervening criminal act of a third party, 'without which the injury would not have occurred,' 'break(s) the causal connection between the defendants' negligence and the injury unless the criminal act was a reasonably foreseeable consequence of the defendants' conduct.' *Davis v. Blockbuster, Inc.*, 258 Ga. App. 677, 679 (1) (575 SE2d 1) (2002)." *Brown v. All-Tech Investment Group*, 265 Ga. App. 889, 894 (1) (595 SE2d 517) (2004).

Part of Reid's argument is premised on her contention that the testimony of Linda and Shirley Videtto is hearsay and was improperly relied upon by the trial court in concluding that Readus was speeding, following too closely, and striking a stationary object. The deposition testimony of the Videttos was not hearsay. OCGA § 24-3-1 (a).

Also, Trooper Johnson's opinion, based on his accident investigation, that Readus' acts were the sole cause of the accident was admissible and probative regarding proximate cause. *Bennett v. Mullally*, 263 Ga. App. 215, 218 (2) (587 SE2d 385) (2003).

We agree with the trial court's conclusion. This situation is similar to and controlled by *CSX Transp. v. Deen*, 269 Ga. App. 641 (605 SE2d 50) (2004). There, Deen's car was stopped at a marked train crossing when her car was struck by a drunk driver, propelling Deen's car into a train, resulting in quadriplegia. Deen sued CSX, contending it was negligent in maintaining the crossing. CSX was granted summary judgment on the issue of proximate cause because of the actions of the drunk driver. "Where the evidence plainly and manifestly shows that the injury was caused by the intervening efficient act of a third person, the defendant can not be held responsible for having produced the injury, and the question is then one of law for determination by the court, and not one of fact for the jury."

(Footnote omitted.) Id. at 643-644 (1). See also *Howard v. Gourmet Concepts Intl.*, 242 Ga. App. 521, 523 (1) (c) (529 SE2d 406) (2000).

4. The sixth, seventh, and eighth enumerations are that the trial court erred in concluding that, as a matter of law, claimed violations by Yingst of the Federal Common Motor Carrier Act, were not causally connected, i.e., were not the proximate cause, of Readus' striking the tractor-trailer.

Reid argues that Yingst was required to exercise "extreme caution" in operating the tractor-trailer due to the rainy and misty weather conditions and should have ceased driving; was required to put out emergency triangles; and improperly parked in the emergency lane.

The latter of these claims has been fully addressed above. Pretermitting whether the conditions were severe enough to require "extreme caution," Yingst had stopped and parked his truck in the emergency lane when the wreck occurred.

Finally, regarding failure to place the triangles, Yingst testified without contradiction that he had immediately turned on his hazard warning signal flashers after pulling over.[4] Regarding failure to place the reflective triangles, as Yingst testified, the federal law required triangles to be placed within ten minutes of stopping and only three or four had elapsed prior to Readus' car hitting his tractor-trailer.[5]

Further, no showing has been made by Reid regarding how placement of these triangles would in any way have made any difference in these events.

There was no error.

5. The ninth enumeration of error, that the trial court erred in concluding there was "no evidence to demonstrate negligence on the part of the defendants," has been fully addressed by the previous divisions.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED NOVEMBER 19, 2004 — 

*Slappey & Sadd, James N. Sadd*, for appellants.

*Dennis, Corry, Porter & Smith, Ronald R. Coleman, Jr., Alexander S. Lurey, Lane, O'Brien & Caswell, Stephen J. Caswell*, for appellees.

---

[4] As required by 49 CFR § 392.22 (a).

[5] 49 CFR § 392.22 (b) (1) requires placement of warning devices "as soon as possible, but in any event within 10 minutes. . . ."