A05A1447. THOMPSON v. SCIENTIFIC ATLANTA, INC.
(621 SE2d 796)

ANDREWS, Presiding Judge.

Paul Thompson, a shareholder in Scientific Atlanta, Inc. (SA), appeals from the trial court's dismissal, pursuant to OCGA § 14-2-744 (a), of his shareholders' derivative action against SA.

SA is a Gwinnett County corporation engaged in the design, development, and manufacturing of networks used by cable operators to distribute video and other services to customers. In 1998, SA began shipping newly developed digital set-tops (units placed on televisions to enable access to cable and other services) and other digital network equipment that replaced analog set-tops and equipment previously sold by SA.

In its Third Quarter Fiscal Year 2001 earnings release on April 19, 2001, SA reported record financial results, but indicated it expected to sustain business performance at the present level rather than expand the business at growth rates previously achieved. During SA's Fourth Quarter Fiscal Year 2001, certain officers and directors traded their stock in the company during SA's open trading window and these sales were in line with their previous trading histories.

On July 19, 2001, financial results for the Fourth Quarter Fiscal Year 2001 and for the entire fiscal year were released by SA, reflecting a record year for SA in many ways. The announcement also indicated, however, that new orders and sales declined in the Fourth Quarter

---

[11] *Jackson v. State*, 278 Ga. 235, 236 (1) (599 SE2d 129) (2004) (citation and punctuation omitted).

from the Third Quarter. Following this announcement, SA's stock price dropped as numerous analysts expressed concern about the apparent declining demand for digital set-tops in the cable industry and what effect that would have on SA's growth.

On December 10, 2001, SA received a "derivative demand" letter from Thompson in which he alleged that the stock price drop had been due to breaches of fiduciary duty by members of the Board of Directors and demanded that SA sue the defendants for unspecified damages. SA responded by letter, requesting additional information concerning the allegations. No response was received from Thompson.

On February 16, 2002, the Board of Directors held a special meeting and appointed three members of the Board who had not sold stock in the questioned transactions to serve as the Special Litigation Committee (SLC) provided for in OCGA § 14-2-744 (a).[1] The SLC was to conduct an investigation of Thompson's allegations. On May 15, 2002, the Board approved a resolution that provided the SLC with full power and authority to make final binding determinations on the Board's behalf regarding the derivative action. The SLC had full access to all SA personnel, advisors, and records, and SA directed all officers and employees to cooperate with the SLC. The SLC retained independent legal counsel and a special accounting advisor.

On November 14, 2003,[2] Thompson filed his complaint, naming as defendants all members of the Board of Directors and numerous senior corporate officers, claiming breaches of fiduciary duties by these individuals, including releasing inaccurate financial information and then engaging in stock sales based on alleged insider information.

On February 9, 2004, after interviewing numerous witnesses, reviewing voluminous documents, and consulting with independent legal counsel and financial advisors, the SLC issued its report, which determined that Thompson's claims were without merit and contrary to the best interests of SA and its shareholders.

Pursuant to this report, the Board of Directors adopted the SLC's recommendations and a motion to dismiss Thompson's lawsuit was filed on March 18, 2004. A copy of the motion and the SLC's report were served on Thompson by regular mail that same day. Uniform Superior Court Rule 6.2 requires that "[u]nless otherwise ordered by the judge, each party opposing a motion *shall* serve and file a

---

[1] One of the original members was later replaced when that member decided he could not continue to serve due to other commitments.

[2] The complaint was originally filed in April 2002, but was "inadvertently dismissed" by Thompson's counsel. It was then refiled.

response, reply memorandum, affidavits, or other responsive material not later than 30 days after service of the motion."[3] (Emphasis supplied.)

No response or request for extension of time having been filed by Thompson, SA filed its formal notice of this fact with the trial court on April 27, 2004, along with a proposed order for dismissal. Thompson then filed an "Emergency Motion To Set Schedule On Defendants' Motion To Dismiss" on April 30, 2004, and a hearing was set by the court for June 2, 2004.

At that hearing, Thompson's counsel acknowledged that, as of that date, no requests for discovery had been filed by Thompson, indicated some miscommunications between the parties, and stated that she thought Thompson had 60 days within which to respond to SA's motion to dismiss.

Thompson's sole enumeration of error is that the court erred by dismissing the action under OCGA § 14-2-744 "without allowing Plaintiff and his counsel a fair opportunity to conduct discovery to aid the court in determining whether the SLC was independent, thorough, and came to reasonable conclusions."

As acknowledged by Thompson, the decisions of the trial court in this matter are not subject to review by this Court in the absence of an abuse of discretion by the trial court. See, e.g., *Millsap v. American Family Corp.*, 208 Ga. App. 230, 233 (3) (430 SE2d 385) (1993); *Cohutta Mills v. Bunch*, 166 Ga. App. 395, 396 (2) (304 SE2d 431) (1983).

OCGA § 14-2-744, Dismissal, provides, in pertinent part, that

> (a) The court may dismiss a derivative proceeding if, on motion by the corporation, the court finds that one of the groups specified in subsection (b) of this Code section has made a determination in good faith after conducting a reasonable investigation upon which its conclusions are based that the maintenance of the derivative suit is not in the best interests of the corporation. The corporation shall have the burden of proving the independence and good faith of the group making the determination and the reasonableness of the investigation.
>
> (b) The determination in subsection (a) of this Code section shall be made by: . . .
>
> (2) A majority vote of a committee consisting of two or more independent directors appointed by a majority vote of

---

[3] Pursuant to OCGA § 9-11-6 (e), Thompson was given an additional three days because the motion had been served upon him by mail.

independent directors present at a meeting of the board of directors, whether or not such independent directors constitute a quorum; . . .

(c) None of the following shall by itself cause a director to be considered not independent for purposes of subsection (b) of this Code section:

(1) The nomination or election of the director by directors who are not independent;

(2) The naming of the director as a defendant in the derivative proceeding; or

(3) The fact that the director approved the action being challenged in the derivative proceeding so long as the director did not receive a personal benefit as a result of the action.

Here, the over 900-page report of the SLC reflected a detailed and documented investigation, including the backgrounds and qualifications of its members. Having received a copy of the report, Thompson failed to initiate any discovery pursuant to OCGA § 9-11-26 et seq. in an effort to show that the SLC did not make a determination in good faith after conducting a reasonable investigation. As stated in *Millsap*, supra at 234 (5), "[t]he Delaware court in *Zapata* [*Corp. v. Maldonado*, 430 A2d 779 (Del. 1981)] recognized that the motion to dismiss under these circumstances 'is perhaps best considered as a hybrid summary judgment motion for dismissal because the stockholder plaintiff's standing to maintain the suit has been lost.' "

Although such a motion does not technically fit into a category of OCGA § 9-11-12 (b) (6) nor does it reach the actual merits of the stockholder's claims as would be at issue in the usual summary judgment motion pursuant to OCGA § 9-11-56, it should be apparent that, upon the corporation's coming forward with a motion to dismiss, supported by the voluminous and detailed report, it was incumbent upon Thompson to come forward with evidence to support his claim of lack of independence of the SLC members. See *Reid v. Midwest Transp.*, 270 Ga. App. 557, 558 (607 SE2d 170) (2004). That he did not do, nor did he attempt to pursue any such evidence. He made no request of the trial court to allow the limited discovery appropriate in such a context. As stated in *Kaplan v. Wyatt*, 499 A2d 1184, 1192 (IV) (Del. 1985), "[i]n the *Zapata* context, discovery *may be ordered* to facilitate inquiries into independence, good faith, and the reasonableness of the investigation. This discovery is not by right, but by order of the Court, with the type and extent of discovery left totally to the discretion of the Court." (Emphasis in original.)

Further, having not filed any response to the motion to dismiss, Thompson waived his right to present opposition to the motion.

*Gullatt v. Omega Psi Phi Fraternity*, 248 Ga. App. 779, 780 (1) (546 SE2d 927) (2001); *Lee v. City of Atlanta*, 219 Ga. App. 264 (464 SE2d 879) (1995).

Thompson has failed to demonstrate any abuse of discretion in the trial court's denial of his belated oral request to conduct discovery made for the first time at the June 2, 2004 hearing. See *Amaechi v. Somsino*, 259 Ga. App. 346, 347 (577 SE2d 48) (2003) (trial judges have broad discretion in controlling discovery).

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED SEPTEMBER 30, 2005.

*Joshua A. Millican*, for appellant.

*Alston & Bird, Oscar N. Persons, Susan E. Hurd, Kelly C. Wilcove, Davidson & Tucker, Gerald Davidson, Jr.*, for appellee.