LR TRUST, derivatively ON BEHALF OF SUNTRUST BANKS, INC.,
Plaintiff,

v.

William H. ROGERS, Jr., Paul R. Garcia, M. Douglas Ivester, Kyle Prechtl Legg, Donna S. Morea, David M. Ratcliffe, Frank P. Scruggs, Jr., Thomas R. Watjen, Dr. Phail Wynn, Jr., Robert M. Beall, II, David H. Hughes, William Linnenbringer, Jerome T. Lienhard II, Defendants,

and

SunTrust Banks, Inc., a Georgia corporation.

CIVIL ACTION NO. 1:16–cv–4132–SCJ

United States District Court, N.D. Georgia, Atlanta Division.

Signed 09/18/2017

David Andrew Bain, Law Offices of David A. Bain, LLC, Michael A. Rogovin, WeissLaw LLP, Atlanta, GA, David C. Katz, Joseph H. Weiss, WeissLaw LLP, New York, NY, for Plaintiff.

J. Timothy Mast, Mary M. Weeks, Troutman Sanders, LLP, Benjamin Wayne Cheesbro, James William Cobb, Caplan Cobb LLP, Atlanta, GA, Annette Lanning Kinderman, Crawford S. McGivaren, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, for Defendants.

## ORDER

HONORABLE STEVE C. JONES, UNITED STATES DISTRICT JUDGE

This matter appears before the Court on Defendants' Motions to Dismiss (Doc. Nos. [36], [39] ).

## I. BACKGROUND

On November 3, 2016, Plaintiff, LR Trust, filed a Verified Stockholder Derivative Complaint[1] on behalf of nominal defendant SunTrust Banks, Inc. ("SunTrust" or the "Company")[2] against certain SunTrust directors and officers (the "Individual Defendants," and collectively with SunTrust, the "Defendants"). Doc. No. [1].

Plaintiff asserts claims for breach of fiduciary duties (Counts I); gross mismanagement (Count II); and unjust enrichment against (Count III) against Defendants relating to conduct of SunTrust's wholly owned subsidiary, SunTrust Mortgages, Inc. ("STM").[3] Id. ¶ 1. Plaintiff alleges that:

> SunTrust was caused to engage in mortgage modification fraud and to violate the Consumer Financial Protection Act of 2010, the False Claims Act, the Financial Institutions Reform Recovery and Enforcement Act of 1989, the Bankruptcy Code, regulations promulgated by the Department of Housing and Urban Development ("HUD"), requirements for originating Federal Housing Administration ("FHA") mortgage loans, the requirements of the Home Affordable Modification Program ("HAMP"), contractual obligations regarding the asset management, securities brokerage, and capital market services." Doc. No. [1]. ¶ 35.

1. A "derivative proceeding" is "a civil suit in the right of a domestic corporation." O.C.G.A. § 14–2–740.

2. "SunTrust is a Georgia-based bank holding company, operating banking centers across the Southeastern Mid–Atlantic region of the United States. Through its various subsidiaries, the Company provides mortgage banking,

3. "STM is the mortgage origination and servicing arm of SunTrust. STM services loans owned by both private-sector financial institutions, as well as government-sponsored enterprises." Doc. No. [1], ¶ 36.

sale of mortgage loans, and the unfair and deceptive practices acts of the individual States.

Doc. No. [1], ¶ 1. Plaintiff alleges that said conduct has been to the detriment of Sun-Trust, its stockholders, its customers, and its business practices. Id. Plaintiff states that "SunTrust has suffered enormous financial,[4] regulatory, and reputation damage" as a result of Defendants' failure to fulfill their fiduciary duties by taking no action to ensure that enterprise threatening activities (such as ineffective internal controls, insufficient staff training, lack of sufficient documentation to evidence compliance with HUD quality control requirements, unacceptably high error rates for the origination of FHA insured-mortgages, and violations of legal obligations) were remedied. Id. ¶¶ 2–5.

Plaintiff further alleges that it "demanded that SunTrust's Board take action to recover its damages from those who caused this material harm, and that it cure the internal control and corporate governance deficiencies." Id. ¶ 7; Doc. No. [36–3]. However, Plaintiff's demand was rejected after formation of a Demand Review Committee (the "DRC").[5] Doc. No. [1], ¶ 7. More specifically, the DRC concluded in a 176–page report[6] that

> Based on the comprehensive investigation covered in this Report, the DRC has concluded that, under the applicable standards, no actionable misconduct occurred on the part of any current or

former STI[7] Director, officer, or employee with respect to the matters raised by the shareholder's demands that have been resolved by settlement. We have determined that the actions of the Directors and officers were reasonable and undertaken in the best interests of SunTrust and its shareholders. We found no facts or circumstances indicating that any Director, officer, or employee knowingly or intentionally violated any law or caused harm or damage to SunTrust. To the contrary, the evidence establishes that the Directors and officers undertook and performed their duties in accordance with applicable standards under Georgia and Virginia law and SunTrust's articles of incorporation and by-laws. Therefore, any such claim would be without basis in fact, legally insufficient, and not actionable by STI.

> Moreover, contingent liabilities related to pending, unresolved matters mentioned by the shareholder cannot, as a matter of law, support a claim at this time .... Thus, additional shareholder- or court-monitored corrective action is neither warranted nor appropriate as a matter of law.

> Finally, we find that, in light of the expense, disruption, burden, and distraction that pursuing such claims would cause SunTrust, its management and shareholders and, in light of our determination that the shareholder has failed to show or allege any act or omission for

---

4. The financial damage is over $900 million. Doc. No. [1], ¶ 6.

5. The Demand Review Committee was comprised of the following board members: Paul R. Garcia, David M. Ratcliffe, and Frank P. Scruggs, Jr. Doc. No. [36–15], p. 2.

6. The report also attached numerous appendices. A sealed version of the DRC report is found in the record at Doc. No. [37]. A redacted version of the DRC report is found in the

record at Doc. No. [46]. The Court will cite to the redacted version of the DRC report in this Order. In addition, for the DRC report and the parties' briefs cited by Document Number (Doc. No.), the Court will utilize the CM/ECF page number headers for citation purposes, as opposed to the page numbers found at the bottom of the documents (except where otherwise indicated).

7. "STI" refers to SunTrust Banks, Inc. Doc. No. [46–1], p. 2.

which there is reasonable grounds to find that any SunTrust Director, officer, or employee should be held liable to SunTrust, it is not in the best interests of SunTrust to bring or pursue any litigation or other action based on the shareholder's demands that are the subject of this Report.

Doc. No. [46–4], pp. 96–97.

Plaintiff asserts that it was neither rational nor the product of independent and disinterested directors to reject its demand. Doc. No. [1], ¶ 8. Plaintiff states that it "brings this action for the benefit of SunTrust to recover the Company's damages, and [to] cause the implementation of the demanded internal control and governance practice reforms." Id.

As stated above, on November 3, 2016, Plaintiff filed its Verified Stockholder Derivative Complaint. Id. In its Complaint, Plaintiff alleges that it acquired SunTrust stock on or about October 7, 2008, has continuously owned SunTrust Common stock at all relevant times, and is a current shareholder of SunTrust. Id. ¶¶ 12, 87.

On February 15, 2017, SunTrust (at the direction of the DRC) and the Individual Defendants filed motions to dismiss. Doc. Nos. [36], [39].[8] Plaintiff filed a response (Doc. Nos. [47], [54] )[9] and Defendants filed reply briefs (Doc. Nos. [52], [53] ). The Court also permitted Plaintiff to file a surreply. Doc. Nos. [61], [62]. This matter is now ripe for review.

## II. LEGAL STANDARD

 Shareholder derivative suits are governed by Federal Rule of Civil Procedure 23.1, and the district court reviews a motion to dismiss under this rule. Peller v. S. Co., 911 F.2d 1532, 1536 (11th Cir. 1990). Rule 23.1 provides in relevant part:

(a) Prerequisites. This rule applies when one or more shareholders or members of a corporation ... bring a derivative action to enforce a right that the corporation ... may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation ....

(b) Pleading Requirements. The complaint must be verified and must:

(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

(2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

(3) state with particularity:

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1.[10]

 In addition, a motion to dismiss a shareholder's derivative suit under Georgia law, O.C.G.A. § 14–2–744, "does not technically fit into a category of [a 12(b)(6)

---

**8.** On February 15, 2017, Defendants Frank P. Scruggs, Jr., David M. Ratcliffe, and Paul R. Garcia joined in the Motion to Dismiss (at Doc. No. [36] ) filed by their co-defendants, William H. Rogers, Jr., M. Douglas Ivester, Kyle Prechtl Legg, Donna S. Morea, Thomas R. Watjen, Dr. Phail Wynn, Jr., Robert M. Beall, II, David H. Hughes, William A. Linnenbringer, and Jerome T. Lienhard II. Doc. No. [39].

**9.** The original response was provisionally filed under seal at Doc. No. [47]. An unredacted copy of the response was filed at Doc. No. [54], after the parties determined that no redactions were necessary.

**10.** "While Rule 23.1 'creates a federal standard as to the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question,' state

motion to dismiss] nor does it reach the actual merits of the stockholder's claims as would be at issue in the usual summary judgment motion . . . ." Thompson v. Sci. Atlanta, Inc., 275 Ga.App. 680, 683, 621 S.E.2d 796, 799 (2005). The "motion to dismiss a shareholder's derivative action pursuant to O.C.G.A. § 14–2–744(a) is essentially a hybrid summary judgment motion for dismissal. Accordingly, [the court] may look beyond the pleadings to the evidence in the record to resolve the [case]." Benfield v. Wells, 324 Ga.App. 85, 85, 749 S.E.2d 384, 385 (2013).[11] In addition, "all non-conclusory factual allegations asserted in the Verified Shareholder Derivative [Complaint] are accepted as true; and all reasonable inferences are drawn in favor of the plaintiff [shareholder] as the non-movant." Sciabacucchi v. Burns, No. 15-CV-7506 (PKC), 2016 WL 4074446, at *1 (S.D. N.Y. July 29, 2016) (citations omitted).

## III. ANALYSIS

### A. Rule 23.1

Defendants argue that the Complaint should be dismissed for failure to satisfy Federal Rule of Civil Procedure 23.1. Specifically, Defendants argue that Plaintiff has not satisfied the two heightened pleading requirements found in Rule 23.1: (1) establishing that Plaintiff was a shareholder at the time of the wrongful conduct (that is alleged to have began in 2006); and (2) stating with particularity the reasons why the DRC's refusal of the demand was wrongful. Doc. No. [36–1], p. 16.

### 1. *Standing*

Federal Rule of Civil Procedure 23.1(b)(1) provides in relevant part that a shareholder derivative action complaint must "allege that the plaintiff was a shareholder . . . at the time of the transaction complained of . . . ." "This rule is intended to prevent prospective plaintiffs from purchasing shares in a corporation with an eye to filing a derivative suit." In re Zoran Corp. Derivative Litig., 511 F.Supp.2d 986, 1009 (N.D. Cal. 2007).[12]

In their motion, Defendants argue that the Complaint challenges wrongful conduct dating back to the beginning of 2006;[13] however, "Plaintiff first purchased its SunTrust shares on October 7, 2008." Doc. No. [36–1], p. 16 (citing Complaint, ¶ 87). Defendants argue that Plaintiff accordingly "does not have standing to assert claims based on wrongful conduct that occurred prior to" October 7, 2008. Doc. No. [36–1],

---

law will determine 'the adequacy of those efforts.' " Sciabacucchi v. Burns, No. 15-CV-7506 (PKC), 2016 WL 4074446, at *5 (S.D. N.Y. July 29, 2016). "Because the demand doctrine is a matter of substance, the Court looks to the state of incorporation to provide the rule of decision." In re The Home Depot, Inc. S'holder Derivative Litig., 223 F.Supp.3d 1317, 1323 (N.D. Ga. 2016); see also Stepak v. Addison, 20 F.3d 398, 402 (11th Cir. 1994). Here, the substantive state law is Georgia law, because Sun Trust is incorporated in Georgia. Doc. No. [1], ¶ 7.

**11.** Cf. SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's

claim, and (2) its authenticity is not challenged.").

**12.** It has also been held that "[t]he main purpose of this so-called 'contemporaneous ownership' rule is to 'prevent[ ] . . . courts from being used to litigate purchased grievances.' " In re Bank of New York Derivative Litig., 320 F.3d 291, 297 (2d Cir. 2003) (citations omitted).

**13.** See also Demand Letter, Doc. No. [36–3], p. 5 ("STM admitted that, between January, 2006 and March, 2012, it originated and underwrote FHA-insured mortgages that did not meet FHA requirements, it failed to carry out an effective quality-control program to identify non-compliant loans, and it failed even to self-report to HUD the defective loans it did identify.").

p. 16 (citing <u>Hantz v. Belyew</u>, No. 1:05-cv-1012, 2006 WL 740408 (N. D. Ga. Mar. 23, 2006) ("[P]laintiff must have owned stock in the company at the time of the transaction of which he complains.") and <u>In re Sagent Tech., Inc., Deriv. Litig.</u>, 278 F.Supp.2d 1079, 1096 (N.D. Cal. 2003) ("A derivative plaintiff has no standing to sue for misconduct that occurred prior to the time he became a shareholder of the corporation.")).

In opposition, Plaintiff states that "[s]ince the causes of action asserted [in the Complaint] did not accrue until 2014 [,] . . . Plaintiff . . . has standing to assert them." Doc. No. [54–1], p. 19. Plaintiff also argues that its "purchase of SunTrust stock before disclosure of the misconduct at issue here and holding the stock since that time establishes his standing for the pre-October 2008 period as well." <u>Id.</u> Plaintiff further states: "[s]ince Defendants' misconduct was not disclosed prior to Plaintiff's share purchase and continued thereafter, Plaintiff has standing." <u>Id.</u> at p. 20. In support of its argument, Plaintiff cites: <u>Bird v. Lida</u>, 681 A.2d 399 (Del. Ch. 1996) for the proposition that "a lack of standing under the continuous ownership rule requires misconduct that was 'publicly and widely disclosed." Doc. No. [54–1], p. 20.

The Court's review of applicable authority yields the case of <u>Bateson v. Magna Oil Corp.</u>, 414 F.2d 128 (5th Cir. 1969) (citations omitted).[14] In <u>Bateson</u>, the court held:

[Rule 23.1] makes it clear that one who buys stock in the corporation cannot maintain a stockholders' derivative suit if the wrongs complained of were completed before his acquisition of stock. However, where the complaint charged continuing wrongs, occurring at the time plaintiff owned stock, the complaint should not be dismissed on defendant's contention that the claims actually arose prior to the time plaintiff acquired his stock. In other words, the requirement that a shareholder must have owned stock at the time of the wrong of which he complains may be satisfied if the wrong is a continuing one; that is, if it 'spans the plaintiff's ownership, or if new elements in a pattern of wrongful conduct occur after acquisition.'

<u>Id.</u> at 130 (citations omitted).

■ "Estoppel principles will also work to deny standing to a plaintiff who buys stock with knowledge of the wrongs of which he complains." <u>Id.</u> at 131.

■ A review of the allegations of the Complaint and the Demand Letter (Doc. No. [36–3]) shows that the wrong complained of was not completed before Plaintiff's acquisition of the stock in 2008[15] and there is nothing to show that Plaintiff bought its SunTrust stock with knowledge of the wrongs of which it now complains. Accordingly, the Court declines to dismiss the Complaint based on Defendants' contention that conduct pre-dated Plaintiff's ownership of stock.[16]

---

14. In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions rendered prior to the close of business on September 30, 1981 by the United States Court of Appeals for the Fifth Circuit.

15. For example, as stated above, the Demand Letter states that: "STM admitted that, between January, 2006 and March, 2012, it originated and underwrote FHA-insured mortgages that did not meet FHA requirements, it failed to carry out an effective quality-control program to identify non-compliant loans, and it failed even to self-report to HUD the defective loans it did identify." Doc. No. [36–3], p. 5

16. The Court also declines to uphold Defendants' citation of authority to the contrary as it is not binding authority. See <u>McGinley v. Houston</u>, 361 F.3d 1328, 1331 (11th Cir.

### 2. *Particularity*

Federal Rule of Civil Procedure 23.1(b)(3) provides in relevant part that the shareholder derivative complaint must state with particularity "any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders ...; and ... the reasons for not obtaining the action or not making the effort." [17]

■ In their motion to dismiss, Defendants argue that "Plaintiff has not stated with particularity why the DRC's refusal of the Demand was wrongful." Doc. No. [36–1], p. 17. In opposition, Plaintiff states: "Defendants incorrectly argue that Plaintiff has not adequately pled the wrongful refusal of Demand." Doc. No. [54–1], p. 21 n.1.[18] The focus of Defendants' argument is on paragraph 89 of the Complaint, which states:

> On November 11, 2015, the DRC notified counsel that the DRC had, after conducting what it determined to be a thorough investigation of the facts and circumstances potentially implicated by the claims and allegations in the Demand Letter, determined that no litigation is justified against any current or former Director, officer, or employee of SunTrust or STM with respect to the

matters raised by LR Trust in the Demand Letter.

Doc. No. [1], ¶ 89.

While the Court agrees that paragraph 89 is a conclusory statement, Defendants do not address paragraph 97 of the Complaint in which Plaintiff sets forth thirteen sub-paragraphs *detailing* why the demand refusal was improper.[19] The Court finds that paragraph 97 meets the requirements of Rule 23.1 by stating with particularity why the demand refusal was wrongful.

### B. O.C.G.A. § 14–2–744

Defendants argue that the Court should dismiss the Complaint because "[t]he DRC Report establishes that the members of the DRC are independent and they in good faith concluded after a reasonable and extremely thorough investigation that this action is not in the best interest of SunTrust." Doc. No. [36–1], p. 20. Defendants further state: "Because the DRC was independent, conducted a thorough and reasonable investigation, and made its determination in good faith, the Court should dismiss the Complaint, pursuant to O.C.G.A. § 14–2–744, based on the DRC's conclusion that maintenance of this action is not in the best interest of the Company." Id. at p. 30.

---

2004) ("The general rule is that a district judge's decision neither binds another district judge nor binds him, although a judge ought to give great weight to his own prior decisions. A circuit court's decision binds the district courts sitting within its jurisdiction while a decision by the Supreme Court binds all circuit and district courts.") (citations omitted).

**17.** "The heightened pleading standard ... reinforces the notion that a shareholder derivative suit is an extraordinary procedural device, 'to be used only when it is clear that the corporation will not act to redress the alleged injury to itself.'" Stepak v. Addison, 20 F.3d 398, 402 (11th Cir. 1994).

**18.** In its opposition brief, Plaintiff also requests to amend its complaint if the Court believes that the Complaint is not sufficient. Said request is procedurally improper (in the absence of a motion, see Fed. R. Civ. P. 7(b)) and moot in light of the Court's ruling below.

**19.** More specifically, paragraph 97 of the Complaint contains allegations of lack of independence, unwillingness to bring a remedial action, admissions of failures and deficiencies, internal report flags of unacceptable error rates, violations of statutory and common law fiduciary duties, failure to exercise oversight and effective internal controls, failure to prevent/cause termination, entrenchment and unwillingness to cooperate. Doc. No. [1], ¶ 97.

·O.C.G.A. § 14–2–744(a) provides in relevant part:

> The court may dismiss a derivative proceeding if, on motion by the corporation, the court finds that [the Demand Review Committee] has made a determination in good faith after conducting a reasonable [20] investigation upon which its conclusions are based that the maintenance of the derivative suit is not in the best interests of the corporation. The corporation shall have the burden of proving the independence and good faith of the group making the determination and the reasonableness of the investigation.

The Court does not understand its inquiry to be into the substantive decision of the DRC, as opposed to an inquiry into the procedures employed by the DRC in making its decision. Cf. In re PSE & G Shareholder Litig., 173 N.J. 258, 291, 801 A.2d 295, 315 (2002); see also Kaplan v. Wyatt, 484 A.2d 501, 519 (Del. Ch. 1984) ("it is the conduct and activity of the [committee] in making its evaluation of the factual allegations and contentions contained in the plaintiff's complaint which provide the measure for the [c]ommittee's independence, good faith and investigatory thoroughness. This is because it is the [committee] which is under examination at this first-step stage of the proceedings, and not the merits of the plaintiff's cause of action.").

## 1. Independence of the Members of the DRC

The Georgia Corporation Code "is instructive in establishing criteria for independence." Millsap v. Am. Family Corp., 208 Ga.App. 230, 232, 430 S.E.2d 385, 387 (1993). "Under O.C.G.A. § 14–2–744(c), a director is not disqualified as lacking independence if (1) nominated or elected by directors who are not independent; (2) the director is named as a defendant in the derivative proceeding; or (3) if the director approved the action being challenged in the derivative proceeding so long as the director did not receive a personal benefit as a result of the action." Millsap, 208 Ga.App. at 232, 430 S.E.2d at 387.

In their motion, Defendants assert that "[e]ach of the DRC members is clearly disinterested and independent" [21] and "[t]here are simply no facts that could call into question the independence and disinterestedness of the DRC members." Doc. No. [36–1], pp. 22, 24.

The Demand Review Committee was comprised of the following board members: Paul R. Garcia, David M. Ratcliffe, and Frank P. Scruggs, Jr. Doc. No. [36–15], p. 2. The DRC Report shows that with the assistance of counsel, the law firm of Cabaniss, Johnston, Gardner, Dumas & O'Neal LLP, the DRC conducted its own review and determination of its members'

**20.** The terms "good faith" and "reasonable" are not defined in the Corporations section of the Georgia Code. Georgia courts have concluded that "dictionaries may supply the plain and ordinary meaning of a word." Dodds v. Dabbs, Hickman, Hill and Cannon, LLP, 324 Ga.App. 337, 346, 750 S.E.2d 410, 417 (2013). To this regard, the Court will look to the dictionary to provide the ordinary meaning of the terms "good faith" and "reasonable" Black's Law Dictionary defines the term as: "A state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a

given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage." Black's Law Dictionary 762(9th ed. 2009). The term "reasonable" has been defined as "1. Fair, proper, or moderate under the circumstances; sensible ... 2. According to reason ...." Id. at 1379.

**21.** As correctly stated by Defendants, "[w]hile Plaintiff also challenges the independence of all members of the Board, because the determination was made by an independent committee in compliance with O.C.G.A. § 14–2–744, only the independence of the DRC is at issue." Doc. No. [36–1], p. 22 n.10.

independence and thereafter reviewed each member's independence periodically. Doc. No. [36–4], p. 2. The report states that "[n]either Mr. Scruggs nor Mr. Garcia were Directors during the period of time at issue in the investigation; and Mr. Ratcliffe was only a Director for a few months at issue." Doc. No. [36–4], p. 2.

After review, as in Benfield v. Wells, 324 Ga.App. 85, 89, 749 S.E.2d 384, 388 (2013), the Court finds that "[h]ere, the [D]efendants satisfied their burden of proving the independence of the three members of the [DRC, Paul R. Garcia, David M. Ratcliffe, and Frank P. Scruggs, Jr.], by supporting their motion to dismiss with a detailed and documented report, including an investigation of the members' backgrounds and qualifications, and a determination by the Board's counsel that there were no factors suggesting that any of the . . . DRC members were not independent. The defendants also supported their motion to dismiss with [declarations] from all three . . . . DRC members confirming their independence." Doc. No. [36–16], p. 4, ¶ 8; Doc. No. [36–17], p. 4, ¶ 8; and Doc. No. [36–18], p. 4, ¶ 9.

"[U]pon the [Defendants] coming forward with a motion to dismiss, supported by the voluminous and detailed report, it was incumbent upon [Plaintiff] to come forward with evidence to support his claim of lack of independence of the [DRC] members." Thompson, 275 Ga.App. at 683, 621 S.E.2d at 799. In light of the holding of Thompson, Plaintiff may not stand on the allegations of lack of independence in its Complaint—Plaintiff was supposed to come forward with evidence. Here, Plaintiff did not come forward with such evidence and as correctly noted by

Defendants, Plaintiff appears to concede independence through its lack of discussion in the response brief.

## 2. *Reasonableness and Good Faith of the Investigation*

As correctly stated by Defendants, under Georgia law, "[a]n independent committee's investigation and determination have been held reasonable and conducted in good faith when the committee has undertaken a 'detailed, documented investigation,' including interviewing numerous witnesses and reviewing voluminous documents." Doc. No. [36–1], p. 25 (citing Millsap, 430 S.E.2d at 388). It has also been held that the mere filing of a DRC report is not, in and of itself, enough to automatically tilt the burden of proof to the plaintiff-shareholder, but the materials presented by a defendant (inclusive of the DRC report) could satisfy the dismissal of a case under O.C.G.A. § 14–2–744, "unless plaintiff-shareholder can affirmatively point to material issues of fact regarding the . . . good faith of the DRC and the reasonableness of its investigation." Benfield v. Wells, 2011 CV 205554 at 8, 2012 WL 10420148 (Ga. Sup. Ct. Oct. 29, 2012)[22] (citing Thompson, 275 Ga.App. at 683, 621 S.E.2d 796).

### i. **Reasonableness**

In their motion and briefing, Defendants argue that "[w]ith the assistance of experienced independent counsel, the DRC conducted a thorough, detailed, and lengthy investigation, spanning a year and encompassing nearly 6,500 hours of investigative time." Doc. No. [52], p. 12 (citing DRC Report at 12–13). Defendants state that the DRC's investigation was thorough and reasonable because the DRC availed itself of well-qualified and independent counsel[23] and "the DRC members also were person-

---

**22.** The Benfield order is found on CM/ECF at Doc. No. [36–4], p. 15.

**23.** As stated in the DRC Report, the DRC selected the law firm of Cabaniss, Johnston, Gardner, Dumas & O'Neal LLP ("Cabaniss").

Doc. No. [46–2], p. 11. "The Cabaniss team is headed by Crawford S. McGivaren, Jr. and Roy J. Crawford. Mr. McGivaren and Mr. Crawford together have over eighty years of experience in corporate and litigation matters, including extensive experience in share-

ally, directly, and extensively involved in the investigatory process" through frequent meetings, informal consultations among themselves and with counsel, and personal participation in nineteen interviews of current and former SunTrust personnel, as well as summation reviews of fifty-four prior interviews. Doc. No. [36–1], pp. 25–27.[24] The DRC Report references these meetings and interviews, and also states:

> The DRC, through counsel, reviewed over one million, eight hundred thousand (1,800,000) pages of documents, including the following broad categories of material: minutes for the Board and its Risk, Compliance, Audit, and Executive Committees from 2005 through 2012, together with reports and other presentations provided to the Board and Committees; documents produced in connection with an investigation by DOJ and the Office of the Inspector General for the U.S. Department of Housing and Urban Development ("HUD") of STM's origination and underwriting of mortgage loans insured by FHA that was ultimately resolved in connection with the STM National Mortgage Settlement; documents produced in connection with the investigation ultimately culminating in the HAMP Settlement; pleadings and other material obtainable pertaining to each matter in litigation referenced in the Demand Letter; independent reviews of SunTrust's operations performed by outside consultants, including Accenture, Pricewaterhouse-Coopers, Deloitte, KPMG, and others spanning the entire period covered by the Demand Letter; SunTrust's public filings with the United States Securities and Exchange Commission (the "SEC") from 2005 through the present; STI's and STM's Articles and Bylaws; and SunTrust Audit Services ("SAS") internal audit reports pertaining to STM's residential mortgage loan line of business (the "Mortgage LOB") from 2005 through 2012.

Doc. No. [46–2], pp. 17–18.

The DRC Report further states that "Counsel for the DRC also interviewed SunTrust's external counsel for matters referenced in the Demand Letter .... Summations of these interviews were prepared by counsel and provided to the DRC. Counsel for the DRC also spoke multiple times with members of the SunTrust legal division to obtain an overview of all relevant investigations, settlements, and litigation matters and their history ...." Doc. No. [46–2], p. 21.

In opposition, Plaintiff argues that the investigation was not reasonable because the DRC failed to act on an informed basis in that it failed to interview the Government investigators who found evidence of misconduct—including the Special Inspector General for the Troubled Asset Relief Program (SIGTARP)[25] who Plaintiff iden-

---

holder and securities litigation and litigation involving officer and director liability. The Cabaniss team also includes others with relevant expertise in banking; finance; qui tam and False Claims Act litigation; consumer finance and foreclosure issues; advising clients regarding corporate structure and governance; and regulation, reporting, and compliance issues in securities, finance, healthcare, and other businesses." Id.

**24.** More specifically, the DRC Report also states that: "[a]ll three DRC members were present and participated in the interviews of 19 Directors, officers, and employees of SunTrust, both current and former, and have reviewed summations of previous interviews of an additional 54 current and former SunTrust personnel." Doc. No. [46–2], p. 18.

**25.** As stated in Plaintiff's brief, the Office of the SIGTARP "is a federal law enforcement agency that targets financial institution crime and is an independent watchdog protecting taxpayer dollars." https://www.sigtarp.gov/Pages/Home.aspx. Doc. No. [62], p. 5.

tified in response to the DRC Counsel's request. Doc. No. [54–1], pp. 21, 24.[26] Plaintiff asserts that "it is unreasonable to presume that a publicly available summary is likely to contain all the information unearthed in the investigation." Doc. No. [54–1], p. 23 n.4. Plaintiff further states: "[w]hen the DRC's failure to interview the relevant government investigators is considered in the light most favorable to the Plaintiff, as it must be, the DRC's investigation is exposed as being impermissibly 'restricted in scope,' 'shallow in execution,' 'pro forma,' and 'half-hearted.'" Doc. No. [54–1], p. 24. In support of its argument, Plaintiff cites: City of Orlando Police Pension Fund v. Page, 970 F.Supp.2d 1022 (N.D. Cal. 2013) ("the Google case"); Barovic v. Ballmer, 72 F.Supp.3d 1210 (W.D. Wash. 2014) ("the Microsoft case"); and Brosz v. Fishman, No. 1:13-CV-753, 2016 WL 7494883 (S.D. Ohio Dec. 29, 2016) ("the Big Lots case").

In Google, the plaintiff in the shareholder derivative action alleged that the company allowed certain unlawful advertisements that resulted in the entry of a nonprosecution agreement between the company and the United States Department of Justice (DOJ), as well as payment of a $500 million fine by the company. Prior to filing suit, the plaintiff made a demand on the board for which the company's board created a committee to review the demand. The committee "ultimately refused the demand in a six-page letter to plaintiff .... [that] cited to the committee's full 149-page report, but did not include a copy of the report (which has not been made public)." 970 F.Supp.2d at 1026. In denying the defendants' motion to dismiss, the district court found that a reasonable investigation of plaintiff's demand should have included an interview of the DOJ's lead investigator (or someone with comparable knowledge of the DOJ's investigation). 970 F.Supp.2d at 1032.

In Microsoft, the shareholder-plaintiffs alleged that the company had ceased to comply with a settlement agreement by which the European Union (EU) dropped an antitrust case against the company. The lack of compliance led to a $732.2 million dollar fine against the company. In light of the monetary loss to the company, the plaintiffs-shareholders issued a demand to the board and eventually filed suit against the company. The company moved for dismissal, which led to the district court examining the good faith and reasonableness of the investigation of the board's demand review committee. In opposition to the motion to dismiss, plaintiffs argued that "the fact that the DRC and Board did not interview [any] European Commission ["EC"] official regarding the company's violation of the ... [s]ettlement agreement with the EU [was] sufficient grounds for calling into question the reasonableness and good faith nature of the [b]oard's investigation." Barovic, 72 F.Supp.3d at 1215. The district court, citing Google, held that for motion to dismiss purposes, a failure to "interview anyone outside the company regarding the violation of the [s]ettlement does permit the inference that the DRC's investigation was not conducted in good faith and was not reasonable." 72 F.Supp.3d at 1217 (emphasis omitted). In reaching this conclusion, the district court stated: "it is plausible that [a member of the] Commission could reasonably have been expected to hold highly material in-

**26.** The Court notes that while Plaintiff *initially* asserted a "reasonable doubt"/"reason to doubt" standard for determining the reasonableness of the DRC investigation, Defendants have set forth the correct standard of requiring material issues of fact regarding the good faith and reasonableness of the DRC's investigation. Doc. No. [52], p. 12 n.1 (citing Benfield, 2011 CV 205554 at 5; Thompson, 621 S.E.2d at 799). Plaintiff appears to assert that the difference is a matter of "semantics." Doc. No. [62], p. 7. The Court does not agree.

formation on topics such as the EU's expectations of [the company's] internal compliance methodology, the content of the ... noncompliance warning, the reactions of the company to such warning, any promises that were made in response to this warning, and whether the company took any steps to ameliorate the ... omission ... after the private summer 2012 warning but before the [later] public warning." Id. at 1215. The district court further stated: "[e]ven if the DRC consulted the EC's Decision/investigation report, it is unreasonable for [the company] to presume, as they do ..., that a publically available summary of an investigation is likely to contain all the information unearthed in the investigation ... Therefore, it is reasonable of [p]laintiffs to argue that the DRC ought to have looked past the face of the not-entirely-on-point EC Decision, and instead interviewed the actual EC investigators to see if they had found, in the course of their investigation, any information pertinent to the manner in which the [i]ndividual [d]efendants discharged their [s]ettlement verification and compliance duties." Barovic, 72 F.Supp.3d at 1216 n.2 (citations omitted).

In Big Lots, the district court (citing Google and Microsoft) found that the shareholder-plaintiff had pled reason to doubt the board's business judgment in rejecting plaintiff's demand where the board failed to interview anyone outside the company, including anyone from the SEC regarding an SEC investigation against the company. 2016 WL 7494883, at *6.

In their reply brief, Defendants distinguish Plaintiff's citation of authority on various grounds [27] and cite authority which indicates that there is no prescribed procedure for a board to follow in its duty to act on an informed basis. Doc. No. [52], p. 13 (citing Halpert Enters., Inc. v. Harrison, No. 07-1144-CV, 2008 WL 4585466, at *2 (2d Cir. Oct. 15, 2008)). In Halpert, the court stated:

> An investigating board generally is under no obligation to make use of any particular investigative technique. "While a board of directors has a duty to act on an informed basis in responding to a demand such as [plaintiff's], there is obviously no prescribed procedure that a board must follow." More specifically, "[i]n any investigation, the choice of people to interview or documents to review is one on which reasonable minds may differ .... Inevitably, there will be potential witnesses, documents and other leads that the investigator will decide not to pursue." .... As such, there is no rule of general application that a board must interview every possible witness

---

**27.** Defendants state:

> In each of Barovic v. Ballmer ("Microsoft"), 72 F.Supp.3d 1210 (W.D. Wash. 2014); Brosz v. Fishman, [2016 WL 7494883] 2016 U.S. Dist. LEXIS 180011 (S.D. Ohio Dec. 29, 2016), and Google, the committee either did not provide a copy of its report to the plaintiff or the court and restricted access to the reasons underlying its decision. Here, Plaintiff had the DRC Report for almost a year before filing the Complaint, and the full DRC Report has been publicly filed, subject to redactions of confidential information, and made available to the Plaintiff and the Court in unre-

dacted form. Also, in Microsoft, the facts differed—there, the government investigators were direct witnesses to the conduct that allegedly gave rise to the breach of duty by Microsoft directors. In contrast, here, the allegations of wrongdoing relate to matters that are purely internal to the Company, concern information within its possession, predate any government investigation, and investigators only came in after the fact to examine what happened. Finally, as to Google, the Delaware Chancery Court has rejected attempts like Plaintiff's to overstate its holding.

Doc. No. [52], pp. 16–17 (emphasis omitted).

who may shed some light on the conduct forming the basis of the litigation.

Id. (citations omitted).

Defendants also argue that "Plaintiff does not (and cannot) specifically allege what information government investigators who were not interviewed might have had that would have changed the DRC's decision to refuse the Demand." Doc. No. [52], p. 14. Defendants assert that "Plaintiff has presented no evidence that anyone not interviewed possessed unique information necessary for the DRC's investigation to be reasonably complete." Id. at p. 16. Defendants further state: "[a]s both the allegations of the Complaint and the DRC Report make clear, [the Government investigators] were basing their investigations on their review of SunTrust's internal documents, and the DRC and its counsel independently reviewed the same." Doc. No. [52], p. 15 (citing Compl. ¶¶ 42–52; DRC Report at 12–16). Defendants state that "[t]he DRC also reviewed the DOJ's detailed presentations of the government's allegations of wrongdoing." Id. (citing DRC Report at 86–88). In addition, "the DRC also interviewed the actual witnesses—the personnel directly involved in the underlying issues—as well as individuals outside of the Company, including outside counsel for matters referenced in the Demand, and analyzed independent reviews performed by outside consultants (including Accenture, Pricewaterhouse-Coopers, Deloitte, KPMG, and others)." Id. (citing DRC Report, p. 16); see also DRC Report, p. 12.

In its sur-reply, Plaintiff states that "[t]he DRC report, however, fails to disclose why it did not interview the investigators." Doc. No. [62], p. 8. Plaintiff also states that its argument "that the DRC should have interviewed the SIGTARP and other investigators is unrebutted by any cognizable evidence." Doc. No. [62], p. 9. Plaintiff argues that it was important to discuss the DRC witness statements/interviews (that blamed SunTrust's compliance failings on the government's shifting expectations for HAMP and TARP) with the Government investigators to gain understanding of "exactly what the government's expectations were and whether the assertions made by the DRC witnesses were accurate and/or consistent with comments heard in the context of other regulatory investigations regarding similar matters." Doc. No. [62], p. 11. Plaintiff further asserts that a conclusion that a "review of the Consent Order and Restitution and Remediation Agreement is just as good as interviewing the investigators" is without basis in law or fact." Id. at p. 9. Plaintiff states: "the Restitution and Remediation Agreement could not be expected to include all of the investigators' findings reflecting their understanding as to the directors' breach of fiduciary duty to the Company and its shareholders. Id. at p. 9 (citing Microsoft, 72 F.Supp.3d at 1216 n.2).

■ After review, the Court finds that the DRC took reasonable steps to investigate through its voluminous document review and interviews, inclusive of its review of the pleadings and other materials obtainable for each matter in litigation referenced in the demand letter, as well as its interviews of current and former directors, officers, and employees of SunTrust and interviews of (and discussions with) external and general counsel who worked on the investigations, settlements, and litigation matters at issue.

The fact that the Government investigators were not interviewed does not change the Court's conclusion. While Plaintiff has cited non-binding authority that indicates that a DRC's failure to interview the Government investigators is not a reasonable investigation (or permits an inference of such), said authority is distinguishable on the grounds asserted by the Defendants in

that in each of the three cited cases (i.e. Google, Microsoft, and Big Lots), there is no indication that a thorough-detailed DRC report was given to the plaintiff-shareholder for its review prior to filing suit. "Here, Plaintiff [has not contested Defendants' statements that it] had the DRC Report for almost a year before filing the Complaint, and the full DRC Report has been publicly filed, subject to redactions of confidential information, and made available to the Plaintiff and the Court in unredacted form." Doc. No. [52], p. 16. The Microsoft case is also distinguishable because the government investigators were direct witnesses to the noncompliance conduct at issue, whereas here, "the allegations of wrongdoing relate to matters that are purely internal to the Company, concern information within its possession, predate any government investigation, and investigators only came in after the fact to examine what happened." Id. at p. 17 (emphasis omitted). In addition, while the Microsoft case does indicate that a DRC's review of a publicly available summary of the investigation is not likely to contain all of the information unearthed by the Government in its investigation, there is more here in that there was a 72-slide DOJ PowerPoint presentation and interviews of external counsel and internal/general counsel in regard to the investigations, settlements, and litigation matters at issue. Doc. No. [46–2], p. 21; Doc. No. [46–4], p. 9. The DRC also reviewed the information that was produced to the Government investigators by SunTrust. Doc. No. [46–2], p. 17. Thus, the DRC did look past any publicly available summary of the investigation, even if it did not interview the Government investigators.

In regard to Plaintiff's argument that it was important to meet with Government investigators to gain understanding of the Government's expectations and to determine if DRC witnesses were accurate (or inconsistent) with their comments, the Court is unable to uphold this argument because the Government's expectations are found in the laws, regulations, and guidance issued in regard to HAMP, HUD, and the other violations at issue in this case. In addition, there is a statement from the SIGTARP in the DRC report that supports the "shifting expectations" statements of the DRC interviewees. See Doc. No. [46–2], p. 56 ("SIGTARP reported one year into HAMP that servicers were reporting that '[r]epeated changes to program guidelines have made it difficult for servicers' operators to keep up with program rules."). Without more, Plaintiff's argument fails.

The Court therefore returns to the general premise that "there is no rule of general application that a board must interview every possible witness who may shed some light on the conduct forming the basis of the litigation." Halpert, 2008 WL 4585466, at *2. As stated above, the Court concludes that the DRC conducted a reasonable investigation.

### ii. Good Faith

In their motion to dismiss, Defendants argue that "[t]his Court should dismiss the claims asserted in the Complaint because the DRC made its determination in good faith that the maintenance of this action is not in SunTrust's best interest." Doc. No. [36–1], p. 28.

In opposition, Plaintiff argues that under no set of circumstances can this Court "conclude confidently" that the DRC's investigation "reflects [the DRC's] earnest attempt to investigate" the Demand in light of the admissions that the Defendants previously caused the Company to make [in which SunTrust admitted, acknowledged, and accepted responsibility for illegal conduct that resulted in $1.3 billion in liability], which Defendants make no attempt to reconcile." Doc. No. [54–1], pp. 24–25. Plaintiff further asserts that "there are material issues of fact that prevent the

Defendants from proving the reasonableness of the DRC investigation at this stage of the litigation." Doc. No. [62], p. 7. Plaintiff states that "after the Company expressly did accept responsibility in Consent Orders and Agreements [28] leading to $1.3 Billion in liability, the DRC reached a sweeping conclusion that no wrongdoing or culpability occurred, just as in Google and Microsoft." Doc. No. [62], p. 10.[29]

In Google, discussed above, the district court stated that it could not "find the [committee] investigation was conducted reasonably and in good faith" where the committee " 'found no wrongdoing or culpability by [company] directors or officers,' even though the [non-prosecution agreement] include[d] an 'acceptance of responsibility,' admitting that [the company] improperly assisted" advertisers. 970 F.Supp.2d at 1032. The Microsoft case, also discussed above, references the Google case in finding that the DRC's investigation at issue was restricted in scope, shallow in execution, pro forma and half-hearted. 72 F.Supp.3d at 1217.

The portion of the Google case that Plaintiff relies on in support of its argument is concerning to the Court because the Delaware Chancery court has declined to follow it in recent authority. See Zucker v. Hassell, No. 11625-VCG, 2016 WL 7011351, 2016 Del. Ch. LEXIS 180 (Del. Ch. Nov. 30, 2016) (stating that the Delaware Chancery court has declined to follow the Google decision in a demand refusal context). The Court's concern is because it appears that Georgia courts look to Delaware law for persuasive authority when there is no previously established Georgia law on the matters at issue. Cf. Heard v. Perkins, 441 B.R. 701, 703 (N.D. Ala. 2010); see e.g., Thompson, 275 Ga.App. at 683, 621 S.E.2d at 799 and Millsap, 208 Ga.App. at 232, 430. S.E.2d at 387 (reviewing Delaware authority).

The Court further finds that the Google case is again distinguishable because there was no explanation in the demand refusal letter for how the committee reached its conclusion and the district court was not provided with a copy of the committee report. 970 F.Supp.2d at 1031. However, the full DRC report in the case *sub judice* was provided to the Court and contains details of how the demand refusal conclusion was reached. In addition, the DRC report acknowledges that "mistakes were made by SunTrust personnel and that deficiencies existed in its administration of the HAMP program between 2009 and 2010," even though the DRC later finds no "actionable" wrongdoing. Doc. No. [52], p. 18 (citing DRC Report at 142, 146).[30] Defen-

---

**28.** Plaintiff argues that this Court should give deference to the Government findings. Doc. No. [62], pp. 6–7 (citing Singh v. Holder, 483 Fed.Appx. 639, 641 (2d Cir. 2012) (if agency's determination "is tethered to the evidentiary record, we will accord deference to the finding"); NLRB v. E–Systems, 103 F.3d 435, 439 (5th Cir. 1997) (administrative agency findings and determinations are entitled to deference).

**29.** Plaintiff also argues that "[t]he DRC's choice to adopt the self-serving statements of 'pride' in SunTrust's compliance efforts in the face of SunTrust's binding admissions reflecting 'inexcusable neglect' was not reasonable and can only be explained as intended to facilitate the desired exoneration of the Individual Defendants." Doc. No. [62], p. 12. In opposition, Defendants assert that Plaintiff mischaracterized the DRC Report when it claims that SunTrust' personnel viewed the deficiencies with a "sense of pride." Doc. No. [52], p. 19 n. 9 (citing (DRC Report, Executive Summary at 7.)). Defendants state that "the DRC Report makes clear that SunTrust personnel viewed the internal audit reports with a sense of pride as demonstrating SunTrust's willingness to 'identify its problems and do its best to formulate and implement plans to improve its operations.' " Id.

**30.** Portions of these pages of the DRC report are not publicly viewable.

dants assert that such acknowledgment is consistent with the Restitution and Remediation Agreement,[31] which does not apply to any statements made by any individual in a civil case initiated by a private party, and explicitly allows SunTrust to "take good faith positions in litigation involving any private party." Doc. No. [52], p. 18 (citing Restitution & Remediation Agmt. at ¶ 3)). Defendants also state that "pursuant to Attachment A to Exhibit J of the Consent Judgment, "SunTrust reserve[d] the right to contest the use and/or application of this [Statement of Facts] in any future litigation." Doc. No. [52], p. 19 (citing Doc. No. [48–7], p. 90 (Consent Judgment, Ex. J, Att. A at 15.)).

▉ After review, the Court is unable to uphold Plaintiff's lack of good faith arguments, as even in giving deference to findings of a Government agency, the Court cannot ignore the plain language of the Agreement/Consent Judgment documents containing the findings. In those documents, it is clear that SunTrust *essentially* negotiated itself (and the Board Defendants) an "out," of the wrongdoing findings for cases such as the present litigation. To this regard, under the circumstances present in the case *sub judice*, the fact that SunTrust entered into consent judgments and otherwise resolved Government investigations of wrongful conduct, without more, does not render the DRC's investigation unreasonable and lacking good faith as a matter of law. It also appears to the Court that the DRC did attempt to reconcile the admissions in the Remediation Agreement with its findings on page 134 of its Report. On page 134, the DRC stated:

The HAMP Settlement was structured as a Restitution and Remediation Agree-

ment. It imposed certain financial penalties and remediation actions on STM, and was predicated on a Statement of Facts attached thereto as Appendix A. The RAMP Settlement prohibits STM, through others, from contradicting a statement contained in Appendix A. However, that prohibition specifically does not apply to any statement made by an individual in the course of any civil action against such individual. Likewise, Appendix A allows STM to take good faith positions in litigation involving any private party. Therefore, the DRC expects, and has been told in interviews, that any potential individual defendant could, and would, challenge the validity of the contents of Appendix A, were that individual to be sued. Because Appendix A is not binding on any potential defendant, the DRC had to assay the facts that could be adduced in trial.

Doc. No. [46–4], p. 56.

The DRC report (at page 143)[32] also addresses why SunTrust entered into the HAMP Settlement and did not defend itself in court, regardless of how much evidence there was to dispute the allegations that a criminal indictment would make.

In summary, the Court finds that Plaintiff has not established (or pointed to) material issues of fact regarding the good faith of the DRC (or reasonableness of the investigation) on the ground asserted concerning the admissions of wrongful conduct.

Plaintiff also asserts lack of reasonableness and good faith based on the DRC's failure to "investigate certain claims raised in the Demand." Doc. No. [54–1], pp. 10–11. The claims at issue are the OIG–FHFA criminal investigation and insurance kick-

---

**31.** The Restitution and Remediation Agreement is found in the record at Doc. No. [48–8] and the Consent Judgment is found in the record at Doc. No. [48–7].

**32.** This portion of the report is not publicly viewable.

back matters that remain ongoing. Doc. No. [54–1], p. 26.[33] Plaintiff states: "[w]ithout conducting any investigation, the DRC refused Plaintiff's Demand on these matters—it did not defer consideration of that Demand until a later time. The DRC cites no authority that its business judgment could extend to matters it has not investigated. The DRC's seeking dismissal with prejudice of claims it did not even investigate easily raises reasonable doubt as to the DRC's investigation." Doc. No. [54–1], p. 27.

In reply, Defendants assert that it is not true that the DRC rejected certain claims without investigation. Defendants state: "the DRC Report makes clear that these ongoing investigations and litigation were reviewed at length by the DRC, which concluded that 'claims based on unresolved lawsuits and investigations are not currently ripe ... [and] pending, unresolved matters mentioned by the shareholder cannot, as a matter of law, support a claim at this time.'" Doc. No. [52], pp. 19–20 (citing DRC Report, at 153–62, 167, 175). Defendants argue and cite authority that "[t]he DRC's deferral of unripe, unresolved claims [is] an appropriate exercise of its business judgment." Id. at p. 20 (citing MacCoumber v. Austin, 2004 WL 1745751, at *6, 2004 U.S. Dist. LEXIS 14772, at *19 (N.D. Ill. July 29, 2004) (dismissing shareholder derivative lawsuit without prejudice as premature); Lowinger v. Oberhelman, 2017 WL 1224524, at *4, 2017 U.S. Dist. LEXIS 50098, at *11 (C.D. Ill. Mar. 31, 2017) (finding that the board's decision to defer its investigation is protected by the business judgment rule and plaintiff's derivative lawsuit was premature); and Piven v. Ryan, 2006 WL 756043, at *3, 2006 U.S. Dist. LEXIS 12745, at *10 (N.D. Ill. Mar. 23, 2006) (concluding that the board's decision to postpone its investigation until the state court proceedings were resolved was not an unreasonable or untimely delay and dismissing the complaint without prejudice as being premature).

After review of Defendants' citation of authority, the Court is unable to find that an issue of material fact exists as to reasonableness and good faith based on the DRC's decision to not investigate the ongoing investigations/pending lawsuits at issue. Defendants are correct that the DRC's deferral was an appropriate exercise of business judgment. See Fed. Deposit Ins. Corp. v. Loudermilk, 295 Ga. 579, 761 S.E.2d 332 (2014) (explaining Georgia's business judgment rule).

Plaintiff also argues that the DRC's findings as to the costs of pursuing the litigation and insurance are unsupported by the investigation. Doc. No. [54–1], p. 27. In reply, Defendants asserts that "Plaintiff claims, without citation, that the DRC was required 'to quantify the competing financial consideration' when it considered the cost of litigation, diversion of management and employee resources, and the potential exhaustion of insurance coverage in refusing the Demand" is incorrect. Doc. No. [52], p. 20. Defendants assert that "[s]uch considerations are appropriate and protected by the business judgment rule without need for quantification." Doc. No. [52], p. 20 (citing Espinoza v. Dimon, 807 F.3d 502, 508 (2d Cir. 2015) ("It is within the bounds of business judgment to conclude that a lawsuit, even if legitimate, would be excessively costly to the corporation or harm its long-term strategic interests.");

---

**33.** Plaintiff also asserts an argument based on the failure to make the DRC Report public (Doc. No. [54–1], p. 26 n.5); however, said argument is moot as a redacted version of the DRC Report is available on the Court's public docket at Doc. No. [46–4]. Defendants also state that Plaintiff had availability to an unredacted version of the complaint for almost a year before filing the Complaint. Doc. No. [52], p. 16. Plaintiff has not contested this statement.

Bresalier v. Good, 246 F.Supp.3d 1044, 1054–55, 2017 WL 1197856, at *7 (D. Del. Mar. 30, 2017) (committee appropriately considered "practical factors" that weighed against bringing litigation, including low chance of success, substantial cost of litigation, lack of insurance to satisfy any successful claim, and the likelihood that litigation would distract key personnel); and Levine v. Liveris, 216 F.Supp.3d 794, 811 (E.D. Mich. Oct. 19, 2016) (finding that shareholder had not raised a reasonable doubt that the board acted in good faith where board mentioned that bringing suit would cause the company to incur substantial legal fees and costs).

After review of Defendants' citation of authority and in the absence of authority from Plaintiff, the Court declines to find that an issue of material fact as to reasonableness and good faith is created by the absence of quantification of the financial considerations referenced in the DRC Report. Cf. In re Bio–Response, Inc., 21 F.3d 1111 (9th Cir. 1994) (citation omitted) ("It is common knowledge that costs of litigation, such as attorney's fees, costs of expert witnesses, and other expenses, have become staggering.").

In summary, the Court finds that Defendants have met their burden (under O.C.G.A. § 14-2-744) of proving the independence and good faith of the DRC and the reasonableness of the investigation. The Court further finds that Plaintiff has not established (or pointed to) material issues of fact regarding the independence and good faith of the DRC or the reasonableness of its investigation.

### D. Discovery

■ In opposition to the motion to dismiss, Plaintiff cites authority from Georgia courts indicating that discovery is appropriate in the context of motions to dismiss derivative complaints and states: "[g]iven the numerous issues raised regarding the DRC's investigation, Plaintiff respectfully requests discovery as to that investigation, including documents reflecting any attempts to interview government investigators, or the reasons why no such attempts were made, and the documents upon which the DRC determined that SunTrust and its personnel acted in good faith and viewed the internal deficiencies with a 'sense of pride.' " [34] Doc. No. [54–1], p. 42. Plaintiff also requests depositions of the DRC members. Id.

In reply, Defendants assert procedural deficiencies. Doc. No. [52], pp. 32–33. Defendants argue in the alternative that Plaintiff has not provided a sufficient basis to show discovery is necessary . . . [as] discovery is "intended more as an aid to the Court than it is as a preparation tool for the parties," and "is not afforded to the plaintiff as a matter of right but only to such extent as the Court deems necessary." Kaplan v. Wyatt, 484 A.2d 501, 510 (Del. Ch. 1984), aff'd by 499 A.2d 1184 (Del. 1985).

After review, the Court finds that Plaintiff's request for discovery is not procedurally proper as it was not requested by motion (pursuant to Fed. R. Civ. P. 7(b)). The Court is also unable to conclude that discovery is necessary as an aid to the Court, as the Court finds that there was sufficient information in the current record to rule on the pending motion to dismiss.

After review, the Court exercises its discretion to deny Plaintiff's request for discovery.

### IV. CONCLUSION

Defendants' Motions to Dismiss (Doc. Nos. [36], [39]) are hereby **GRANTED** as to all defendants under O.C.G.A. § 14-2-744. All non-DRC deferred claims are **DISMISSED WITH PREJUDICE.** All DRC deferred claims (i.e. the OIG–FHFA crimi-

---

**34.** See note 29, supra.

nal investigation, insurance kickback litigation, and ongoing investigation/litigation matters) are **DISMISSED WITHOUT PREJUDICE** as premature.

Because the Court finds that this derivative proceeding is subject to dismissal under O.C.G.A. § 14-2-744, the Court does not reach Defendants' alternative (failure to state a claim) arguments for dismissal.

In addition, Plaintiff's request to amend its complaint is **DENIED** as procedurally improper and moot.

Plaintiff's request for discovery is also **DENIED**.

Nothing further remaining for the Court's review, the Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED,** this 18th day of September, 2017.